UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CEDRIC BELL,

               Plaintiff,

v.

STATE OF MICHIGAN
ADMINISTRATIVE BOARD OF
CLAIMS, *et al.*,

               Defendants.

_____/

Case No. 2:20-cv-10193
District Judge Bernard A. Friedman
Magistrate Judge Anthony P. Patti

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT THE MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS PAYNE, ROOT, SIMS, CURTIS, AND RUHL (ECF No. 54)

**I.**     **RECOMMENDATION**: The Court should **GRANT** the summary judgment motion filed by Defendant Corrections Officers (COs) Brandon Payne, Nathan Root, James Sims,[1] Joshua Curtis, and Jeffrey Ruhl[2] (collectively the JCF Defendants) (ECF No. 54), and dismiss all remaining claims against these Defendants.

---

[1] For reasons I am unable to discern, the docket indicates that CO Sims was terminated from the case on September 23, 2020.

[2] I will use the spelling for CO Ruhl's name used in the summary judgment motion, rather than the spelling from the docket.

## II.    REPORT

### A.    Background

#### 1.    Factual Background

Plaintiff is a state prisoner currently incarcerated at the Michigan

Department of Corrections (MDOC) Alger Correctional Facility.  *See*

www.michigan.gov/corrections, "Offender Search," last visited September 12,

2022.  Plaintiff initiated this lawsuit on January 24, 2020, by way of a complaint

that named approximately nine Defendants – (1) State Administrative Board of

Claims members; (2) MDOC Director H. Washington; (3) G. Robert Cotton

Correctional Facility (JCF) Warden Kevin Lindsey; (4) CO Brandon Payne; (5)

CO Nathan Root; (6) CO James Sims; (7) CO Josh Curtis; (8) CO Jeffrey Ruhl;

and (9) Nurse Russell.  (ECF No. 1, PageID.8-11.)

Plaintiff was permitted to proceed in this Court *in forma pauperis*.  (ECF

Nos. 2, 6, 25.)  On May 8, 2020, Judge Friedman entered an opinion and order of

partial dismissal, which terminated Defendants State of Michigan Administrative

Board of Claims, MDOC, Washington, and Lindsey, and dismissed several claims

against the remaining Defendants.  (ECF No. 7, PageID.406-415.)  Specifically,

the Court dismissed those claims against CO Curtis based upon his supervisory

role; Plaintiff's claim, at ¶¶ 20-23 of the complaint, based on allegations that COs

Payne and Root filed a false misconduct report on July 9, 2018; the claim at ¶¶ 25-

26 and 95 regarding the alleged confiscation/destruction of personal property by COs Payne, Root, and Sims; the conspiracy claims against COs Payne, Root, and Sims at ¶¶ 23, 92, and 95; any race discrimination claim against COs Payne and Root at ¶¶ 28, 83, and 98; Plaintiff's equal protection claim at ¶¶ 63, 72, 76; and official capacity claims against COs Payne, Root, Sims, Curtis, and Ruhl.  (ECF No. 7, PageID.406-413.)  However, the Court found that "[P]laintiff's claims of retaliation, excessive force, and denial of medical care against [COs] Payne, Root, Sims, Curtis, and Ru[h]l, and RN Russell [were] not subject to dismissal under §§ 1915(e)(2)(b) and 1915A(b)."  (ECF No. 7, PageID.413.)  And with regard to Plaintiff's retaliation claims, the Court noted that the portions of those claims involving the confiscation/destruction of personal property and the misconduct report were not subject to dismissal.  (ECF No. 7, PageID.408-409 n. 4, 5.)

In that same order, the Court allowed Plaintiff to amend his complaint without reasserting already-dismissed claims.  (ECF No. 7, PageID.413-414.) Plaintiff filed what he titled a second amended complaint on September 23, 2020, which lists twenty-four named Defendants (not including John and Jane Does) in the caption, but names only sixteen in the text (*compare* ECF No. 16, PageID.451, *with* ECF No. 16, PageID.452-453, ¶¶ 4-19), and includes many of the claims previously dismissed.  As the instant motion was filed by COs Payne, Root, Sims,

Curtis, and Ruhl, I will focus below only on the remaining claims against these

Defendants.

### 2.    Instant Motion

On January 13, 2022, the JCF Defendants filed the instant motion for

summary judgment pursuant to Fed. R. Civ. P. 56(a), asserting that Plaintiff has

failed to exhaust any of the remaining claims against them as alleged in Plaintiff's

amended complaint.  (ECF No. 54, PageID.696, 700-712.)  Plaintiff filed his

response in opposition[3] on February 24, 2022, prior to the Court-imposed deadline

(*see* 02/11/22/ text-only order), largely arguing the merits of his claims as opposed

to responding to the JCF Defendants' exhaustion arguments.  (ECF No. 68.)  And

while arguing that his claims are "cognizable under federal law[,]" and that

Defendants "failed to act[,]" and touching upon *respondeat superior*,

circumstantial evidence and *Brady* obligations, to the extent his unsworn

submission deals with exhaustion of administrative remedies at all, it does so in

conclusory fashion, summarizing the rules but without evidentiary support, while

repeatedly returning to an explanation as to why the Defendants' actions were

_____

[3] Plaintiff's response brief is thirty-seven pages long, far exceeding the twenty-five page limit imposed by E.D. Mich. Local Rule 7.1(d)(3)(A).  This seems to be a pattern, and it must stop.  To address this, the Court has denied his motion for extension of page limitations on a more recent filing of his, and has stricken the 74 page response brief that he filed on or about September 2, 2022 (ECF Nos. 121, 122).

wrongful.  (*See, e.g.*, ECF No. 68, PageID.899, 900, 904, 908-916, 920-922, 931.)[4]
In their March 18, 2022 reply brief, the JCF Defendants reiterate the arguments
raised in their motion.  (ECF No. 78.)

### B.    Standard

Under Fed. R. Civ. P. 56, "[t]he court shall grant summary judgment if the
movant shows that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is
material if it might affect the outcome of the case under governing law.  *Anderson
v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court "views the evidence,
all facts, and any inferences that may be drawn from the facts in the light most
favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95
F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of
material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486
(6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing
that if a party "fails to properly address another party's assertion of fact," the court
may "consider the fact undisputed for purposes of the motion").  "Once the moving
party satisfies its burden, 'the burden shifts to the nonmoving party to set forth

---

[4] Plaintiff also alludes to his need for appointment of counsel (ECF No. 68,
PageID.907, 930), but the Court has previously addressed and denied his motion to
appoint (ECF No. 63).

specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The nonmoving party "must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must . . . do more than simply show that there is some metaphysical doubt as to the material facts[.] . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).  "[T]he mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (internal quotations and citations omitted).  In other words, summary judgment is appropriate when the motion "is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case[.] . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not reduce his obligations under Rule 56.  Rather, "liberal treatment of *pro se* pleadings does not require lenient

treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus., & Textile Emp.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

### C.    Discussion

#### 1.    Exhaustion under the PLRA

Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e *et seq*., a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted the provision to address the "outsized share" of prisoner litigation filings and to ensure

that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007). Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]" *Porter v. Nussle*, 534 U.S. 516, 524 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id*. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Thus, the PLRA requires not only exhaustion, but *proper* exhaustion. *See Woodford*, 548 U.S. at 92 (concluding that if a prisoner fails to file a procedurally proper grievance, he fails to satisfy the PLRA's exhaustion requirement). "[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses

8

the issues on the merits.)" *Id*. at 90 (quotation marks and citation omitted).  As long as the prison "clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust." *Burnett v. Howard*, No. 2:09-CV-37, 2010 WL 1286256, at *1 (W.D. Mich. Mar. 30, 2010) (internal quotation marks and citation omitted).  That said, a court "is not required to blindly accept the state's application of the procedural rule." *Reeves v. Salisbury*, No. 11-cv-11830, 2012 WL 3206399, at *5 (E.D. Mich. Jan. 30, 2012), report and recommendation adopted in part, rejected on other grounds, 2012 WL 3151594 (E.D. Mich. Aug. 2, 2012).

Finally, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216.  Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA.  *Id*. at 212-13.  As such, defendants bear the burden of proof on exhaustion.  *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

### a.    Grievance procedures at the MDOC

Pursuant to Policy Directive (PD) 03.02.130, dated July 9, 2007,[5] the administrative remedies available are as follows.  First, the inmate must attempt to resolve issues with the staff member involved within two business days of becoming aware of a grievable issue.  (ECF No. 54-2, PageID.719, ¶ P.)  "Dates, times, places, and names of all those involved in the issue being grieved are to be included."  (ECF No. 54-2, PageID.720, ¶ R.)  The inmate should receive a response at Step I within fifteen business days after receipt of the grievance.  (ECF No. 54-2, PageID.721, ¶ X.)

If the inmate is dissatisfied with the Step I disposition or does not receive a response by ten business days after the due date, he or she may file a Step II grievance using the appropriate form.  (ECF No. 54-2, PageID.722, ¶ BB.)  As with Step I, the inmate should receive the Step II response within fifteen business days.  (ECF No. 54-2, PageID.722, ¶ CC.)

Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response by ten business days after the due date, the inmate may file a Step III grievance.  (ECF No. 54-2, PageID.722-723, ¶¶ FF.)  "To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form (CSJ-247B), to the Grievances and

[5] This version was superseded on March 18, 2019, but is applicable here because the grievances at issue were filed prior to that date.

Appeals Section within ten business days after receiving the Step II response or, if

no response was received, within ten business days after the date the response was

due, including any extensions."  (ECF No. 54-2, PageID.722-723, ¶ FF.)  The

matter is fully exhausted after the disposition of the Step III grievance.  *Surles*, 678

F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his

grievance to be considered fully exhausted.").

> Non-grievable issues include:
>
> Decisions made in hearings conducted by hearing officers of the State
> Office of Administrative Hearings and Rules, including property
> disposition, and issues directly related to the hearing process (e.g.,
> sufficiency of witness statements; timeliness of misconduct review;
> timeliness of hearing).
>
> * * *
>
> Decisions made in minor misconduct hearings, including property
> disposition.

(ECF No. 54-2, PageID.717-718, ¶ F.1, 4.)

### b.     Exhaustion of retaliatory misconduct claims

When an inmate claims that he received a retaliatory misconduct ticket, he

must exhaust the claim by raising the issue through the hearings and appeals

process.  This is so because "'[d]ecisions made in hearings conducted by hearing

officers of the Hearings and Appeals Division of the Office of Policy and Hearings

(OPH)' are non-grievable and 'shall be rejected by the Grievance Coordinator.'"

*Siggers v. Campbell*, 652 F.3d 681, 694 (6th Cir. 2011) (quoting PD 03.02.130, ¶

11

F.1 (effective date Dec. 19, 2003)).[6]  Thus, if an inmate claims that he received a

retaliatory misconduct ticket, he must raise the issue during the initial misconduct

hearing.  *Siggers*, 652 F.3d at 694.

### 2. The Court should grant summary judgment on Plaintiff's remaining claims against the JCF Defendants

#### a. Plaintiff's remaining claims against the JCF Defendants

To the extent Plaintiff makes claims not already dismissed by the Court

against some or all of the JCF Defendants in his amended complaint, the remaining

claims/allegations appear to be, as the JCF Defendants assert (ECF No. 54,

PageID.699-700): the retaliatory issuance of false misconduct tickets and

confiscation/destruction of personal property; and excessive force in restraining

Plaintiff without consideration of his medical accommodation allowing use of a

cane.  (ECF No. 16, PageID.458-468, ¶¶ 57-169.)[7]

#### b. Plaintiff's grievances/misconduct hearing reports

The JCF Defendants attached to their summary judgment motion Plaintiff's

Step III Grievance Report, and the six grievances they believe relevant, as they are

from JCF during the period encompassing Plaintiff's subject allegations and

claims: (1) JCF-18-11-2365-28c; (2) JCF-18-08-1943-28I; (3) JCF-18-09-1964-

---

[6] This is just the previous version of that quoted above.

[7] Plaintiff does not appear to dispute this characterization.

28E; (4) JCF-18-05-1111-27z; (5) JCF 18-05-1110-27B; and (6) JCF-18-05-1112-27z.  (ECF No. 54-3.)  The JCF Defendants have also attached the misconduct reports and other documents related to Plaintiff's relevant misconduct hearings. (ECF Nos. 54-7, 54-8.)

### c. Retaliatory confiscation/destruction of personal property

The Court should find that Plaintiff has failed to exhaust his retaliatory confiscation/destruction of personal property claims.

In his amended complaint, Plaintiff alleges that on or near July 9, 2018, COs Payne and Root confiscated and destroyed his personal property in retaliation for not answering their questions.  (ECF No. 16, PageID.458-459, 462-464.)  He also alleges that on August 7, 2018, CO Sims broke security seals on, and destroyed, his personal property in retaliation for filing grievances against CO Sims related to May 2018 property destruction.  (ECF No. 16, PageID.462-463, 466-467, ¶¶ 113, 151.)

In JCF-18-05-1111-27z, JCF-18-05-1110-27B, and JCF 18-05-1112-27Z, Plaintiff complained that CO Sims destroyed his personal property in May 2018. (ECF No. 54-3, PageID.776-780, 782-786, 788-792.)  But the Court dismissed Plaintiff's independent property destruction claims against COs Payne, Root, and Sims in its opinion and order of partial dismissal (ECF No. 7, PageID.408-409) and, so far as I can tell, Plaintiff includes allegations regarding CO Sims's May

2018 property destruction in his amended complaint not to assert an independent claim of property destruction, but as a basis for his claim that CO Sims destroyed his property in August 2018 in retaliation for the grievances filed regarding the May 2018 incident(s). (ECF No. 16, PageID.462-463, 466-467.) Further, again so far as I can tell, Plaintiff makes no argument to the contrary in his convoluted response brief. Accordingly, the Court should find that JCF-18-05-1111-27z, JCF-18-05-1110-27B, and JCF 18-05-1112-27Z, do not serve to exhaust Plaintiff's retaliatory destruction of property claims against any of the JCF Defendants.

Plaintiff did directly complain of retaliatory property damage in JCF 18-11-2365-28c, dated September 25, 2018, with an incident date of July 9, 2018 (ECF No. 54-3, PageID.758-759, 761-762), but as the JCF Defendants assert in their motion for summary judgment (ECF No. 54, PageID.706), this grievance was properly rejected at Step I for grieving multiple issues, and the rejected was upheld through Step III (ECF No. 54-3, PageID.756, 760, 764). Under PD 03.02.130 ¶ G.1, a grievance may be rejected if it "contains multiple unrelated issues" (ECF No. 54-2, PageID.718), and Plaintiff appears to have done so at Step I of JCF 18-11-2365-28c, complaining of property destruction by multiple people on different dates, placement in segregation following a misconduct charge, and disregard of his medical accommodation (ECF No. 54-3, PageID.761-762). And Plaintiff raises no argument in his response brief that should convince the Court otherwise, nor

does he show that he cured the deficiencies in his rejected grievances by filing or re-filing separate and distinct ones.

Plaintiff asserts that he exhausted his property destruction claim against CO Sims after his transfer from JCF, citing ARF-18-10-2325-28G, attached to Plaintiff's original complaint (ECF No. 68, PageID.910-911; *see also* ECF No. 1, PageID.36-42), but this grievance was rejected on procedural grounds through Step III, and Plaintiff provides no meaningful argument that the Court should find the procedural disposition incorrect.  Thus, the JCF Defendants produced evidence that Plaintiff failed to exhaust his retaliatory destruction of property claims, and Plaintiff failed to meet his burden of producing evidence establishing a genuine issue of material fact to the contrary.

Plaintiff does argue that because he appealed JCF 18-11-2365-28c (and his other grievances) through Step III, he exhausted his claims (ECF No. 68, PageID.924, 931), but, as provided above, the PLRA requires not only exhaustion, but proper exhaustion.  *See Woodford*, 548 U.S. at 92; *see also Burnett*, 2010 WL 3206399, at *1 (W.D. Mich. Mar. 30, 2010).  Accordingly, the Court should grant summary judgment on Plaintiff's retaliatory destruction of property claims against COs Payne, Root, and Sims.

### d.    Excessive force

The Court should also grant summary judgment on Plaintiff's claim of excessive force against COs Curtis and Ruhl.

Plaintiff alleges in his amended complaint that COs Curtis and Ruhl failed to comply with his medical accommodation order allowing him use of a cane, and handcuffed him behind his back, causing him to fall and suffer injuries. (ECF No. 16, PageID.460-462, 464-468.) The Court should find that Plaintiff failed to exhaust this claim.

Plaintiff complained of excessive force in JCF-18-11-2365-28c (ECF No. 54-3, PageID.759, 762), but as discussed in greater detail above, that grievance was rejected on valid procedural grounds through Step III, and Plaintiff has made no argument, nor provided any evidence, which would create a genuine issue of material fact regarding the accuracy of that disposition. Nor has he demonstrated that this deficiency was cured by another grievance filing.

Plaintiff also complained of excessive force at JCF-18-08-1943-28I (ECF No. 54-3, PageID.766), but that grievance was rejected on procedural grounds (failure to attempt to resolve the issue) through Step III, as well, and from a review of that grievance, the rejection appears proper. Moreover, Plaintiff has given the Court no reason, either through argument or evidence, to doubt that conclusion or believe that he later ameliorated his administrative posture.

Additionally, in JCF-18-09-1964-28E, Plaintiff complained that he requested but did not receive an "appeal packet" for disobeying a direct order by COs Curtis and Ruhl on July 25, 2018, but in my estimation, that grievance relates to Plaintiff's retaliatory misconduct claim, rather than the alleged excessive force itself.  (ECF No. 54-3, PageID.771-775.)  As Plaintiff offers nothing other than his same argument, rejected above, that any grievance appealed through Step III exhausts his claims (ECF No. 68, PageID.924), the Court should find that he failed to exhaust administrative remedies for his excessive force claim.[8]

### e.   Retaliatory misconduct tickets

#### i.   July 9, 2018 ticket issued by COs Payne and Root

Again, Plaintiff alleges that COs Payne and Root issued him a false retaliatory misconduct ticket on July 9, 2018.  (ECF No. 16, PageID.458-460, 463-464.)  The JCF Defendants argue that the misconduct hearing documents demonstrate that Plaintiff failed to properly exhaust this claim, asserting:

> C/O Payne wrote a DDO misconduct on Bell on July 9, 2018, but the hearing officer ultimately found Bell not guilty of the charge after determining that Bell did not likely hear or understand what C/O Payne told him to do.  During the misconduct hearing, Bell did not allege that the misconduct ticket was issued for any improper reasons

---

[8] It is unclear from the Court's opinion and order of partial dismissal whether the Court perceives these allegations to state a claim for denial of medical care (ECF No. 7, PageID.413), but to the extent that they do form the basis for such a claim against any or all of the JCF Defendants, the above conclusion and recommendation would be the same.

17

and the hearing officer did not find nor did Bell allege retaliation by
C/O Payne.  Even Bell's written statement failed to raise any issue of
retaliation.

(ECF No. 54, PageID.710.)

Indeed, a review of the misconduct hearing documents attached to the JCF

Defendants' motion reveals that the charge was dismissed and that retaliation is not

mentioned anywhere, including in the summary provided in the Misconduct

Hearing Report, or in Plaintiff's written statement.  (ECF No. 54-7, PageID.829-

842.)  And Plaintiff, so far as I am able to discern, does not directly or clearly

assert, in his unsworn response brief, that he raised the issue of retaliation at the

misconduct hearing.

Nor would any attempt to raise retaliation in an appeal of his favorable

misconduct hearing decision have served to exhaust the above claim.

As noted in *Chrzan* [*v. McKay*, Case No. 1:19-cv-116, 2020 WL
1067291, at *3 (W.D. Mich. Feb. 3, 2020)], courts in both this district
and the Western District of Michigan have concluded that, in order to
properly exhaust a retaliatory misconduct ticket claim, the prisoner
must raise that claim at the misconduct hearing and, *if unsuccessful*, in
a motion or application for rehearing or in an appeal.  *See, e.g., Rush
v. Newcomb*, 2019 WL 3755967, at *6 (W.D. Mich. May 24, 2019),
report and recommendation adopted 2019 WL 3733846 (W.D. Mich.
Aug. 8, 2019) (noting the exhaustion process for a claim of false
retaliatory misconduct ticket, and concluding that the plaintiff failed
to exhaust because he "failed to assert any fact that could support a
claim of retaliatory action at the time of his misconduct hearing, and
he did not petition to reopen his hearing"); *Ayotte*, 2019 WL 2219739,
at *5 (noting that pursuant to *Siggers*, a prisoner "must argue that his
receipt of a misconduct ticket was based on conspiracy or retaliation
during the first misconduct hearing" and then must file a motion or

18

application for rehearing if unsuccessful); *Wilson v. Babyak*, 2020 WL 32552 (E.D. Mich. Jan. 2, 2020) (concluding that, to the extent the plaintiff claimed retaliatory misconduct tickets, the hearing/appeal process of exhaustion applied); *Harris-Bey v. Alcodray*, 2017 WL 3124328, at *4 (E.D. Mich. July 24, 2017) (concluding that the plaintiff failed to properly exhaust because "he did not allege retaliation at his misconduct hearing and, additionally, he did not appeal the finding of guilt following that hearing as required by MDOC Policy Directive 03.03.150 at VVV"); *Alexander v. Ojala*, 2016 WL 6662559, at *3 (W.D. Mich. Sept. 23, 2016), report and recommendation adopted, 2016 WL 6659133 (W.D. Mich. Nov. 10, 2016) ("Plaintiff could only exhaust the claim that he was given a retaliatory misconduct ticket by asserting this claim during his misconduct hearing.").

*Brown v. Klotz*, Case No. 19-11509, 2020 WL 6390500, at *3 (E.D. Mich. Aug. 17, 2020), *report and recommendation adopted* 2020 WL 5525208 (E.D. Mich. Sept. 15, 2020).

As the JCF Defendants have produced evidence that Plaintiff failed to challenge his July 9, 2018 misconduct ticket on the basis of retaliation at the hearing itself, and Plaintiff has failed to create a genuine issue of material fact by asserting otherwise or producing evidence to the contrary, the Court should find that Plaintiff failed to exhaust his administrative remedies and grant summary judgment on Plaintiff's retaliation claim against COs Payne and Root.

### ii.    July 25, 2018 ticket issued by CO Curtis

Although I am uncertain as to whether Plaintiff actually raises a claim of retaliatory misconduct against CO Curtis in his amended complaint, the JCF

19

Defendants appear to concede that he has, so I will address exhaustion of that claim.

The exhaustion issue for the July 25, 2018 retaliatory misconduct ticket claim is murkier. The JCF Defendants attach the hearing documents to their motion, and assert:

> There was support for the July 25, 2018, DDO misconduct that Sergeant Curtis wrote based on Bell's refusal to return to his assigned cell. A hearing was held on August 1, 2018, and the hearing officer, who elevated the charge to a Class I misconduct, found Bell guilty after considering Bell's statement and other documentation. There is no indication that during the misconduct hearing, Bell alleged that the misconduct ticket was issued in retaliation for engaging in protected conduct. Then after, Bell's request for rehearing was returned without decision because it was not timely filed.

(ECF No. 54, PageID.711.)

Here, the Misconduct Report provides no indication that Plaintiff raised the issue of retaliation at the misconduct hearing itself, but the attached request for rehearing explicitly alleges retaliation against CO Curtis. (ECF No. 54-8, PageID.845, 849-850.) And although the JCF Defendants contend that Plaintiff's request for rehearing was returned without decision for being untimely (ECF No. 54, PageID.711 (citing ECF No. 54-8)), Plaintiff has asserted, albeit in his unsworn response brief, that Defendant's actions led to the untimeliness (ECF No. 68, PageID.926-931). He also complained of his failure to timely receive an appeal packet in JCF-18-09-1964-28E. (ECF No. 54-3, PageID.771-775.)

20

Nevertheless, Plaintiff does not assert, nor produce any evidence, that he alleged retaliation *at the misconduct hearing*, which is a threshold requirement for exhaustion. *See Triggs v. Barnhardt*, No. 2:20-cv-8, 2021 WL 6550824, at *5 (W.D. Mich. Dec. 16, 2021), *report and recommendation adopted* 2022 WL 170062 (W.D. Mich. Jan. 19, 2022) ("[T]he undersigned is not persuaded by the argument that raising retaliation for the first time on appeal is sufficient to exhaust.") (citing *Dykes v. Benson*, No. 1:18-CV-664, 2020 WL 6597563, *9 (W.D. Mich. Mar. 13, 2020), *report and recommendation adopted as modified*, No. 1:18-CV-664, 2020 WL 4726701 (W.D. Mich. Aug. 14, 2020)).  And Plaintiff himself links exhaustion of administrative remedies to an "inmate challeng[ing] the procedures at a disciplinary hearing[.]"  (ECF No. 68, PageID.925.)[9]

---

[9] Plaintiff does argue that he cannot adequately defend against the summary judgment motion, citing Fed. R. Civ. P. 56(d), because Defendants have control of certain evidence, and states:

> [T]hese documents are relevant and factual issues, considering Plaintiff Bell, was transfered [sic] to another facility before he discovered the property gone, and then allowed to file a appeal for rehearing request of the misconduct that was denied for being filed after 30 days yet the Defendant withholding property for 10 days played a major role and the denial of basic human needs.

(ECF No. 68, PageID.929.)  "If a nonmovant shows *by affidavit or declaration* that, for specified reasons, it cannot present facts essential to justify its opposition, the court *may*: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d) (emphases added).  Plaintiff has failed to meet this burden.  Nor does the Court see, in the absence of such adequate

Accordingly, the Court should find that Plaintiff has failed to exhaust his retaliatory misconduct claim against CO Curtis, and grant summary judgment on that basis.

### D.   Conclusion

The Court should **GRANT** the summary judgment motion filed by Defendant COs Payne, Root, Sims, Curtis, and Ruhl (collectively the JCF Defendants) (ECF No. 54), and dismiss all remaining claims against these Defendants.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

---

explanation, how additional discovery would benefit him in opposing the threshold issue of exhaustion here.

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: September 13, 2022

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE