UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CEDRIC MARK EARSHIN
BELL,

               Plaintiff,

v.

STATE OF MICHIGAN
ADMINISTRATIVE BOARD OF
CLAIMS, *et al*.,

               Defendants.

_____/

Case No. 2:20-cv-10193
District Judge Bernard A. Friedman
Magistrate Judge Anthony P. Patti

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT SEVERAL DISPOSITIVE MOTIONS WHILE STAYING A FINAL RULING AS TO DEFENDANT CORIZON HEALTH (ECF Nos. 64, 71, 75, 111)

**I.     RECOMMENDATION**: The Court should **GRANT** the dispositive

motions filed by Corizon Health, Husain, and McKissick (ECF No. 71) and those

filed by MDOC Defendants Steece, E. Taylor, Adray, Ream (ECF No. 64), Rivard-

Babisch (ECF No. 75), Hass, E. Parr-Mirza, and S. Tyler (ECF No. 111).[1]

_____

[1] On February 17, 2023, Tehum Care Services, Inc., doing business as Corizon
Health, Inc., filed a *Suggestion of Bankruptcy and Notice of Automatic Stay*. (ECF
No. 134.) The portion of this report that relates to Corizon Health, which is too
intertwined with the claims made against its agents or employees (*i.e.*, Husain and
McKissick) to refrain from addressing it here, was essentially ready for release
when the suggestion of bankruptcy was filed and contains a prospective
recommendation as to what should happen if and when the bankruptcy stay is
lifted. Accordingly, the period for objecting to those recommendations that

## II.    REPORT

### A.    Pending dispositive motions by thirteen (13) Defendants

The Court's recent report and recommendation reviewed the original

complaint and order of dismissal (ECF Nos. 1, 7), the September 23, 2020

amended complaint (ECF No. 16), and the dismissal of five JCF Defendants

(Payne, Root, Sims, Curtis, and Ruhl) (ECF No. 131).  (*See* ECF No. 132,

PageID.1276-1279.)  This history will not be repeated here.  Currently before the

Court are dispositive motions filed by several Defendants:

- MDOC Defendants Steece, E. Taylor, Adray, and Ream's Fed.
  R. Civ. P. 12(b)(6) motion to dismiss based on the statute of
  limitations and personal involvement (ECF No. 64);

- Defendants Corizon Health, Husain, and McKissick's motion to
  dismiss based on the statute of limitations (ECF No. 71); and,

- MDOC Defendant Rivard-Babisch's motion to dismiss based
  on the statute of limitations (ECF No. 75), which adopts and
  incorporates co-defendants' motion and brief (ECF No. 64).

Plaintiff timely filed a combined response (ECF No. 83).  (*See also* ECF Nos. 80-

81.)[2]  Additionally pending before the Court are:

---

specifically relate to Corizon Health, and this Court's final ruling on the portion of
the motion related to Corizon Health only, are **STAYED**.

[2] Plaintiff's response brief is approximately 29 pages in length.  Ordinarily, this
length would exceed the 25-page limit.  *See* E.D. Mich. LR 7.1(d)(3)(A).

2

- MDOC Defendant Campbell's Fed. R. Civ. P. 12(b) motion for dismissal based on personal involvement (ECF No. 101), as to which a report and recommendation has been filed (ECF No. 132);

- MDOC JCF Defendant Russell's motion for summary judgment based on exhaustion (ECF No. 110), which adopts and incorporates co-defendants' motion and brief (ECF No. 54), as to which a report and recommendation has been filed (ECF No. 132); and,

- MDOC Defendants Haas, S. Tyler, and Parr-Mirza's motion for dismissal based on the statute of limitations (ECF No. 111), which adopts and incorporates co-defendants' motion and brief (ECF No. 64).

As explained in greater detail in the recent report and recommendation (*see* ECF No. 132, PageID.1280), the Court struck Plaintiff's original response (ECF No. 121) to the later-filed dispositive motions (ECF Nos. 101, 110, 111), and, Plaintiff has not availed himself of the opportunity the Court afforded him to file a compliant response (ECF Nos. 122, 130).  Accordingly, these motions are unopposed.  E.D. Mich. LR 7.1(c)(1).  Nonetheless, the Court must consider whether MDOC Defendants Campbell, Russell, Haas, S. Tyler, and Parr-Mirza have discharged their burden.  *See Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991).

---

However, the Court will consider the response as is, because it seems to respond to at least three dispositive motions, *i.e.*, ECF Nos. 64, 71, and 75.

Having already issued a report and recommendation as to the motions filed by MDOC Defendants Campbell and Russell (*see* ECF Nos. 101, 110, 132), this report and recommendation concerns the remaining, pending dispositive motions filed by a combined eleven Defendants (ECF Nos. 64, 71, 75, 111).

**B.    Discussion**

**1.    Factual background**

A review of Plaintiff's special accommodation orders and hospital visits provides helpful context regarding the matters currently before the Court.

**a.    Special accommodation orders**

From 2014 through 2017, Plaintiff was issued various special accommodation orders, concerning housing, medical equipment/supplies, and other matters.  (ECF No. 1-1, PageID.106.)  Plaintiff alleges that MRF medical staff "falsified medical records . . . that resulted in injuries."  (ECF No. 16, ¶¶ 175-176, 211.)  According to Plaintiff, MRF RNs Cooper and Parr-Mirza, as well as Corizon Health, informed an MRF counselor (non-party Jenkins-Grant), as well as Defendants Steece and Haas, that Plaintiff was assessed by Husain on September 21, 2016 and Husain "removed medical accommodations," *e.g.*, elevator, ramp, quad-cane, metal braces/boots.  Plaintiff claims this representation was false and resulted in injuries.  (ECF No. 16. ¶¶ 175-176.)

Further, on December 2, 2016, Plaintiff completed another health care request, which, *inter alia*, sought a correct copy of his special accommodation for the elevator (no steps or ramp).  (ECF No. 16, PageID.484.)

### b.    September 2016 – Mount Clemens Regional Medical Center & McLaren Macomb

On September 22, 2016, Plaintiff was treated at Mount Clemens Regional Medical Center, where he underwent a CT scan of the abdomen and pelvis (for abdominal pain), an x-ray of the lumbosacral spine, a CT scan of the brain and cervical spine, an x-ray of the left knee, and an x-ray of the chest (each due to a fall down the stairs).  (ECF No. 1-2, PageID.272-284; ECF No. 16, ¶ 171.)  Plaintiff's September 23, 2016 discharge summary from McLaren Macomb includes instructions on blunt chest trauma and head injury.  (ECF No. 1-2, PageID.266-270; ECF No. 16, ¶ 170.)  Plaintiff alleges that, in 2016, "due to actions of staff and medical personnel[][,]" after returning from McLaren Hospital's emergency room, he "had to file . . . 11 grievances . . . [,]" (*id*., ¶ 26).

### c.    December 2016 – health care request regarding Allegiance Health

On December 2, 2016, Plaintiff completed a health care request, seeking a copy of the release form he completed on October 20, 2016 regarding Allegiance Health Henry Ford Hospital, as well as certain information regarding the resulting production.  (ECF No. 16, PageID.491.)  On or about December 9, 2016, Plaintiff

5

was informed that his request for health record information could not be processed. (ECF No. 16, PageID.492.)

### d.   February 2017 and March 2017 – Henry Ford Macomb Hospital in Clinton Township

From February 2, 2017 to February 3, 2017, Plaintiff was treated at HFMH, where he complained of a fall, loss of consciousness, headache, neck pain, and back pain.  (ECF No. 1-2, PageID.286-300; ECF No. 1-3, PageID.301-344; ECF No. 16, ¶ 172.)

On March 7, 2017 at 12:08 p.m., at MRF, Plaintiff underwent an MDOC consultation and received a 7-day prescription for Cipro and a 1-month prescription for prednisone, which Keith Papendick, M.D. reviewed on March 8, 2017.  Papendick appears to have recommended consultation with podiatry at Duane L. Waters Hospital (DWH).  (ECF No. 1-3, PageID.374.)  Later that same day, around 4:00 p.m., Plaintiff was seen at HFMH for abdominal pain, and he received a chest x-ray, an abdomen pelvis CT scan, and a CBC and differential and basic metabolic panel (each abnormal), and multiple other tests.  (ECF No. 1-3, PageID.346-372.)

### e.   July 2018 – Henry Ford Emergency Room

Plaintiff claims he went to the Henry Ford Emergency room after he was found unconscious in his cell on July 25, 2018.  (ECF No. 16, ¶ 160; *see also id*., ¶¶ 98, 100, 143, 144, 161, 173.)  On August 6, 2018, Plaintiff executed an MDOC

6

Authorization for Disclosure of Health Information dated July 26, 2018. (ECF No. 16, PageID.495.) He made a follow up request for copies by completing an MDOC Health Care Request on August 14, 2018. (*Id.*, PageID.496.) That same day, Plaintiff was informed that his request for health record information – namely, the July 26, 2018 Henry Ford Emergency Room reports – could be processed once he completed and forwarded a disbursement voucher for $9.00. (ECF No. 16, PageID.494.) On or about August 24, 2018, Plaintiff was sent Form CHJ-121 to request medical records. (*Id.*, PageID.497.)

On September 10, 2019, Plaintiff sought copies of the records from his July 25, 2018 to July 26, 2018 Henry Ford Emergency Room treatment, as well as a copy of his injury report (CSJ-156). (ECF No. 16, PageID.500.) On or about September 11, 2019, Plaintiff was informed that his request for health record information could be processed once he completed and forwarded a disbursement voucher; however, he was also informed that his request could not be processed, at least in part because "injury reports are not a part of the medical record." (ECF No. 16, PageID.499, 501.)

> **f. Transfers after initiating this lawsuit (January 2020 to October 2022) and the alleged status of follow up treatment**

In his operative pleading, which Plaintiff claims to have filed "without access to personal property legal documents that Defendants clearly had in their

7

possession and admitted too [sic] [,]" (ECF No. 83, PageID.1003), Plaintiff alleges

a lack of follow up treatment:

> [T]here has never been any follow up medical treatment by Macomb
> Correctional Facility [MRF], Chippewa Correctional Facility [URF],
> [JCF], Adrian Correctional Facility [ARF], back to [MRF], back to
> [URF], Carson City Correctional Facility [DRF], back to [JCF], and
> now Lakeland Correctional Facility [LCF].

(ECF No. 16, ¶ 23.)  Since Plaintiff initiated this lawsuit in January 2020, at which

point he was located at MRF, he claims to have been transferred to LCF in

February 2020 (*id.*), where he appears to have remained through his September 23,

2020 amended complaint (ECF No. 16) and perhaps until August 2021, at which

point he was located at SRF (ECF No. 49.)  In May 2022, he was transferred from

SRF to Alger Correctional Facility (LMF).  (ECF No. 98.)  In October 2022, he

was transferred to KCF (ECF No. 125), his current location.

### 2.   Interpreting Plaintiff's claims

With one exception, this report interprets Plaintiff's claims based on his

"short and plain statement of facts," for which he cites Fed. R. Civ. P. 8(a) –

undoubtedly a reference to the requirement that a pleading that "states a claim for

relief" must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  In this statement, Plaintiff

mentions retaliation (which will be construed under the First Amendment), Eighth

Amendment deliberate indifference, and the Americans with Disabilities Act

(ADA) 42 U.S.C. §§ 12101-12213.  (*See* ECF No. 16, ¶ 31.)  However, this

appears to be Plaintiff's only reference to the ADA; thus, notwithstanding the

ADA reference in Plaintiff's motion response (*see, e.g.,* ECF No. 83, PageID.1015,

1018), this report does not construe Plaintiff's operative pleading as alleging an

ADA claim.

Likewise, this report does not construe Plaintiff's fleeting references to the

Fourteenth Amendment (*id.*, ¶ 53), due process (ECF No. 16, ¶¶ 113, 183), equal

protection, or claims that he "was treated differently from other prisoners with

class 2 misconducts[,]" (ECF No. 16, ¶¶ 103, 146), as claims, since they are not

described in Plaintiff's Fed. R. Civ. P. 8(a) statement (*id.*, ¶ 31).[3]  Accordingly, this

report proceeds as if Plaintiff's claims are based on First Amendment retaliation or

Eighth Amendment deliberate indifference to a serious medical need.

### 3.    Corizon Health, Husain, and McKissick's motion to dismiss (ECF No. 71)

Plaintiff identifies Corizon Health as the MDOC's medical care provider,

Husain as an MRF doctor, and McKissick as an MRF registered nurse (RN) /

---

[3] Plaintiff does not appear to mention "race" in his operative pleading (ECF No. 16), which is perhaps a reflection of the Court's May 18, 2020 conclusions that his original complaint "fails to state a race discrimination claim upon which relief may be granted[,]" or the Court's conclusion that the original complaint's equal protection claim was subject to dismissal, because it "lack[ed] factual support" and "fail[ed] to allege with any specificity how he was treated differently from others who were similarly situated or that he was discriminated against because he is a member of a protected class."  (*See* ECF No. 7, PageID.410-412.)

physician assistant (PA).  (ECF No. 16, ¶¶ 10, 12, 17, 39, 45, 46.)  Plaintiff also

mentions "unknown" Corizon agents or employees.  (*Id.*, ¶¶ 10, 40.)  (*See also id.*,

¶ 31.)  Plaintiff's claims against these Defendants concern:

- An alleged "breach of duty to protect" or alleged "failure to administer adequate medical remedy" on or near the alleged events of July 25, 2018 (*id.*, ¶¶ 101, 146, 161);

- An alleged "breach of duty and failure to administer adequate medical remedy" following:  **(a)** the assertion that Husain removed medical accommodations on September 21, 2016 (*id.*, ¶¶ 175-176, 196-198, 204); **(b)** September 23, 2016 treatment at McLaren Macomb (*id.*, ¶¶ 26, 170, 188, 190, 191, 192, 194-195, 202); **(c)** his February 2-3, 2017 treatment at HFMH (*id.*, ¶¶ 172, 188, 190, 202); and, **(d)** perhaps even his March 7, 2017 treatment at HFMH (*id.*, ¶¶ 173); and,

- Alleged "retaliatory treatment for filing Section 1983 and for filing grievances," regarding which Plaintiff references:  **(a)** multiple transfers – *i.e.*, from MRF to URF in June 2017, to Saginaw Correctional Facility (SRF) in November 2017, to JCF in May 2018, to ARF in September / October 2018, back to MRF in December 2018, back to URF in September 2019, to DRF in October 2019, and back to JCF on December 26, 2019 (*id.*, ¶¶ 205-206); **(b)** issues with his medical supplies at URF, ARF, and DRF (*id.*); and, **(c)** an undated threat by an MRF RN and McKissick (*id.*, ¶ 208).

(*See also* ECF No. 16, ¶ 189; ECF No. 71, PageID.947-948; ECF No. 83, 1002-

1003.)  Plaintiff alleges he was not provided with "adequate medical care . . .

following the (four) different emergency room hospital trips and stay at the

hospital regional."  (ECF No. 16, ¶ 174.)

Plaintiff alleges he "signed 5 different medical release forms so Corizon Health Inc. staff employees at [MRF] c[ould] get medical records from all 4 different hospital emergency room[s][,]" *i.e.*, McLaren Macomb, Henry Ford, Mount Clemens Regional Hospital, Henry Ford Hospital. (ECF No. 16 ¶ 191; *see also id.*, ¶¶ 178, 194, 195, 202.) According to Plaintiff, he "only saw medical staff regarding grievances interview(s)[,] not medical treatment for medical conditions from the 4 emergency room visits to different hospitals." (ECF No. 16, ¶ 193.)

### a.    Statute of limitations

Corizon Health, Husain, and McKissick argue that Plaintiff's claims against them are barred by the statute of limitations. (ECF No. 71, PageID.949-955.) 42 U.S.C. § 1988 "requires courts to borrow and apply to all § 1983 claims the one most analogous state statute of limitations." *Owens v. Okure*, 488 U.S. 235, 240 (1989) (citation omitted). In Michigan, "the period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person or for injury to a person or property." Mich. Comp. Laws § 600.5805(2). "[T]he claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." Mich. Comp. Laws § 600.5827. However, "[t]he statute of limitations for claims subject to the PLRA is tolled while the plaintiff exhausts his required administrative remedies." *Surles v.*

*Andison,* 678 F.3d 452, 458 (6th Cir. 2012) (citing *Brown v. Morgan,* 209 F.3d 595, 596 (6th Cir.2000)).[4]

### b.    Husain

As for Plaintiff's claims against Husain (ECF No. 16, ¶¶ 175-176), assuming such claims were exhausted by MRF-16-10-1906-12I (Step III response January 20, 2017) or MRF-16-10-1921-17Z (Step III response January 13, 2017) (*see* ECF No. 1-1, PageID.156, 166 & ECF No. 54-3), then, at the latest, the statute of limitations would have expired on January 20, 2020 or January 13, 2020, respectively – in either case well before the September 23, 2020 operative pleading (ECF No. 16).  And claims against Husain concerning the alleged events of September 2016 would not relate back to the January 24, 2020 original complaint, because Husain was not named as a Defendant in the original pleading, and that pleading concerned the alleged events of May 2018 to April 2019.  (ECF No. 1, PageID.8-9, 12-19.)  (*See also* ECF No. 71, PageID.950-952.)  *See* Fed. R. Civ. P.

---

[4] Plaintiff acknowledges this law, but he also mistakenly relies upon law from outside this Circuit and outside of Michigan, namely Cal. Civ. Proc. Code § 335.1 (effective Jan. 1, 2003) and *Martinez v. Gomez,* 137 F.3d 1124, 1125 (9th Cir. 1998), as amended (May 1, 1998).  (ECF No. 83, PageID.1009-1010.)  Thus, perhaps relying upon his state court life sentence in Case No. 95-13659 (Wayne County), *see* www.michigan.gov/corrections, "Offender Search," Plaintiff is not convincing in his argument that "there is no tolling of the time limit for prisoners sentenced to life without parole[,]" nor is he convincing in his argument that "most prisoner[s] who want to file a section 1983 lawsuit for money damages can wait for four years before the filing timeline runs out."  (ECF No. 83, PageID.1010-1011.)

15(c)(1) ("An amendment to a pleading relates back to the date of the original pleading when[,]" *inter alia*, "the law that provides the applicable statute of limitations allows relation back[,]" or "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading[.]").

### c.    McKissick

As for Plaintiff's claims against McKissick (ECF No. 16, ¶¶ 192-196, 208), assuming such claims were exhausted by MRF-16-11-2152-28E (Step III response February 28, 2017) or MRF-16-11-2162-12D (Step III response March 28, 2017) (*see* ECF No. 54-3), then, at the latest, the statute of limitations would have expired on February 28, 2020 or March 28, 2020, respectively – in either case well before the September 23, 2020 operative pleading (ECF No. 16).  And claims against McKissick concerning follow up from his September 22, 2016 treatment at Mount Clemens Regional Medical Center and/or his September 23, 2016 treatment at McLaren Macomb – and in particular an alleged November 16, 2016 visit with McKissick – would not relate back to the January 24, 2020 original complaint, because McKissick was not named as a Defendant in the original pleading, and that pleading concerned the alleged events of May 2018 to April 2019.  (ECF No. 1, PageID.8-9, 12-19.)  (*See also* ECF No. 71, PageID.952-954.)

### d.    Corizon Health and unknown Corizon Health employees

As to Corizon Health and unknown Corizon Health employees (*e.g.*, John Doe, Jane Doe), Plaintiff's claims appear to relate to: (a) treatment following his September 22-23, 2016 visits to Mount Clemens Regional Medical Center and McLaren Macomb; (b) treatment following his February and March 2017 visits to HFMH; (c) treatment following his July 25-26, 2018 Henry Ford Emergency Room visit; and, (d) transfers from June 2017 to December 2019.  (ECF No. 16, ¶¶ 146, 161, 170, 174, 205-206).[5]

### i.    September 2016

To the extent Plaintiff's allegations relating to events that allegedly occurred on or about September 2016 (*see* ECF No. 16, ¶¶ 26, 170, 187, 190-192, 194-198, 202, 204) were exhausted by any of Plaintiff's nine MRF grievances initiated in September 2016 or October 2016 and appealed through Step III, the latest Step III response was dated March 9, 2017.  (*See* ECF No. 54-3, PageID.740-742.) Therefore, at the latest, the statute of limitations on any claim exhausted by these grievances would have expired on March 9, 2020 – well before the September 23, 2020 operative pleading.  And claims concerning the alleged events on or near September 2016 would not relate back to the January 24, 2020 original complaint,

---

[5] Other references to "unknown staff" or "correctional officers unknown to me," do not appear to reference Corizon Health employees.  (*See* ECF No. 16, ¶¶ 71, 77, 96.)

because that pleading concerned the alleged events of May 2018 to April 2019. (ECF No. 1, PageID.12-19.)  (*See also* ECF No. 71, PageID.954-955.)

### ii.   February and March 2017

The Corizon Defendants' motion does not address Plaintiff's claims about treatment in the wake of his February and March 2017 visits to HFMH, which clearly reference MRF but do not appear to mention a related grievance.  (*See* ECF No. 16, ¶¶ 172, 173, 174, 188, 190, 202.)  Nonetheless, the statute of limitations on such claims would have expired on or about February and March of 2020 – well before the September 23, 2020 operative pleading (ECF No. 16).  Moreover, while the statute is tolled during pursuit of administrative remedies, *Surles*, 678 F.3d at 458, Plaintiff's MDOC Prisoner Step III Grievance Report – dated May 21, 2020 and attached to a prior dispositive motion in this case – does not list any grievances initiated at MRF in 2017 that were pursued through Step III (*see* ECF No. 54-3).[6]

---

[6] By relying upon the MDOC Prisoner Step III Grievance Report (ECF No. 54-3), the Court need not convert the motion to dismiss to one for summary judgment under Fed. R. Civ. P. 12(d).  Although "[a]ssessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings[,]" a court "may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are *referred to in the complaint* and are *central to the claims* contained therein, without converting the motion to one for summary judgment."  *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (citations omitted) (emphases added).  Plaintiff's operative pleading describes "exhaustion of administrative remedies," in part by alleging he "used the grievance(s) procedures available at . . . all Michigan State Prisons to try and resolve the problems by filing steps 1.2.3. grievances and appeals."  (ECF No. 16,

Therefore, Plaintiff's claims against Corizon Health or its unknown employees concerning treatment following his February and March 2017 visits to HFMH, appear to be time-barred. Moreover, claims concerning the alleged events on or near February and March 2017 would not relate back to the January 24, 2020 original complaint, because that pleading concerned the alleged events of May 2018 to April 2019. (ECF No. 1, PageID.12-19.)

### iii. July 2018

The Corizon Defendants' motion acknowledges Plaintiff's July 2018 HFMH hospital visit, but it does not address Plaintiff's claims about treatment in the wake of his July 25-26, 2018 visit to HFMH (see, e.g., ECF No. 16, ¶¶ 101, 146, 161). (Compare ECF No. 71, PageID.939, 947; with id., PageID.950-955.) The statute of limitations on such claims would not have expired until around July 2021, making the September 23, 2020 operative pleading (ECF No. 16) timely as to such

---

¶ 23; see also id., ¶¶ 53, 163, 168, 175, 202, 203.) More to the point, as this Court has previously noted in a case where a defendant relied on a certified MDOC Prisoner Step III Grievance Report, "the court may take judicial notice of a prisoner's administrative grievances for purposes of determining a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Arnold v. Rivard*, No. 2:15-CV-10608, 2015 WL 13742824, at *2 (E.D. Mich. Dec. 23, 2015) (Morris, M.J.) (citation omitted), *report and recommendation adopted*, No. 15-10608, 2016 WL 878330 (E.D. Mich. Mar. 8, 2016) (Edmunds, J.). *See also Bradfield v. Corr. Med. Servs.*, No. 1:07-CV-1016, 2008 WL 5685586, at *5 (W.D. Mich. July 3, 2008) ("the court may take judicial notice of these administrative proceedings for purposes of resolving defendants' motion to dismiss."), *report and recommendation adopted*, No. 1:07-CV-1016, 2009 WL 514251 (W.D. Mich. Feb. 27, 2009).

claims.  Moreover, such claims arguably relate-back to the original complaint's alleged events of May 2018 to April 2019, even though Corizon Health was only named as Russell's *employer* and not as a Defendant in the original pleading. (*Compare* ECF No. 1, PageID.7-9, 11-19; *with*, ECF No. 16, ¶¶ 29, 78, 97, 130, 142, 160),

Nevertheless, such claims do not appear to have been administratively exhausted.  To be sure, Corizon Health, Husain, and McKissick only raise the statute of limitations as a basis for dismissal of Plaintiff's claims against them, within which they note that "[c]laims alleging violations of 42 U.S.C. § 1983 are tolled for the time it takes for the plaintiff to exhaust administrative remedies." (ECF No. 71, PageID.942, 949-956.)  Thus, the Court *sua sponte* undertakes consideration of whether Plaintiff's July 2018-related claims are exhausted.  *See White v. McGinnis*, 131 F.3d 593, 594-595 (6th Cir. 1997) (affirming "a district court judgment dismissing [Plaintiff's] civil rights complaint filed under 42 U.S.C. § 1983 without prejudice for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a)[,]" where it was reviewed under Section 1915A ("screening") and "clear from plaintiff's complaint that plaintiff filed a Step I administrative grievance regarding his claims, but did not pursue an appeal of the denial of the grievance.").  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement . . . requires 'proper' exhaustion, which includes compliance with a state agency's timeliness deadlines." *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).

Looking to Plaintiff's MDOC Prisoner Step III Grievance Report – dated May 21, 2020 and attached to a prior dispositive motion in this case – it lists fifteen grievances initiated at various institutions (JCF, SRF, and ARF) in 2018 that were pursued through Step III, only eight of which were initiated on or after July 2018:

1.   JCF-18-11-2365-28c, which was rejected at Step I for grieving multiple issues, and the rejection was upheld through Step III (ECF No. 1-1, PageID.43-50; ECF No. 54-3, PageID.756, 760, 764);

2.   JCF-18-08-1943-28I, which was rejected on procedural grounds (failure to attempt to resolve the issue) through Step III (ECF No. 54-3, PageID.765-770);

3.   ARF-18-10-2714-28C, which was rejected at Step I for presenting "multiple issues," and the rejection was upheld through Step III (ECF No. 1-1, PageID.126, 129-130);

4.   ARF-18-11-2858-27 (received at Step I on November 8, 2018 and rejected at some point);

18

5.   ARF-18-10-2721-27C (received at Step I on October 24, 2018 and rejected at some point);

6.   ARF-18-10-2635-28C (received at Step I on October 15, 2018 and rejected at some point);

7.   ARF-18-10-2535-28G, which was rejected at Step I for "lack of jurisdiction-out side [sic] agency," and the rejection was upheld at Step II and Step III (ECF No. 1, PageID.39, 41-36-42); and,

8.   JCF-18-09-1964-28E, which was rejected at Step I as untimely, and the rejection was upheld at Step II and Step III (ECF No. 1-1, PageID.108, 110, 112; ECF No. 54-3, PageID.771-775).

(*See also* ECF No. 54-3, PageID.731-734.) Taking judicial notice of the grievances and the MDOC Prisoner Step III Grievance Report in the record of this case, and assuming Plaintiff intends to rely upon any of these grievances to exhaust his claims against Corizon Health and/or its unknown employees regarding treatment in the wake of Plaintiff's July 25-26, 2018 visit to HFMH, none of these grievances would appear to have properly exhausted such claims. Accordingly, they should be dismissed without prejudice.

### iv.   Issues with medical supplies at URF, ARF, and DRF (June 2017 - December 2019)

The Corizon Defendants' motion does not address Count IV, where Plaintiff claims "retaliatory treatment for filing Section 1983 and for filing grievance(s)[,]" (*see* ECF No. 16, PageID.476-478 ¶¶ 205-211), other than mentioning it with respect to McKissick (*see* ECF No. 71, PageID.939 ¶ 6). Yet, within this cause of action, Plaintiff specifically references Corizon Health as follows:

19

- at URF (to which he allegedly transferred in June 2017), "Corizon Health Inc. Defendant took medical Afo [ankle foot orthosis) Boots and Braces," (ECF No. 16, ¶ 205);

- at ARF (to which he allegedly transferred in September or October 2018), "Corizon Health Inc. medical staff retaliated taking medical supplies," (*id.*); and,

- at DRF (to which he allegedly transferred in October 2019), "health service Corizon Health Inc. Staff" denied "medical footwear" and "medical treatment to a serious medical need[,]" (*id.*, ¶ 206).

(*See also* ECF No. 83, PageID.1002-1003.)  However, even taking into consideration these alleged transfer dates set forth in Plaintiff's motion response, Plaintiff's allegations do not, standing alone, provide enough detail to "state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).

### 4.    Steece, E. Taylor, Adray, and Ream's (ECF No. 64), Rivard-Babisch's (ECF No. 75), and Haas, S. Tyler, and Parr-Mirza's (ECF No. 111) motions for dismissal

Plaintiff identifies Parr-Mirza, Adray, and Rivard-Babisch as MRF RNs (¶¶ 13, 14, 16, 47, 48, 50),[7] E. Taylor as an MRF Grievance Coordinator (*id.*, ¶¶ 18, 38), and Steece as an MRF Deputy (*id.*, ¶¶ 19, 37).  Although Plaintiff does not list Ream, Haas, and S. Tyler among "parties" or "parties to this action and their job titles," he elsewhere indicates Ream is a grievance coordinator at ARF (*id.*, ¶¶ 27,

---

[7] Plaintiff also identifies D. Herring as an MRF RN (ECF No. 16, ¶¶ 15, 49); however, Herring is not a party to a pending dispositive motion.  In fact, she has not filed anything since her May 19, 2022 appearance of counsel and demand for trial by jury.  (ECF Nos. 95, 96.)

200), Haas is the MRF Warden (*id.*, ¶ 176, 186, 188-193, 198) and S. Tyler is an MRF RN (*id.*, ¶ 202).

### a.   Claims based on the allegations against these Defendants

Parr-Mirza, Adray, Rivard-Babisch, S. Tyler, Steece, Haas, E. Taylor (each of MRF) and Ream (of ARF) are mentioned in several paragraphs of the operative pleading, and Plaintiff seems to allege his related claims were exhausted as follows:

- ¶ 175, MRF-16-10-1906-12I (Step III response January 20, 2017)

- ¶ 176, MRF-16-10-1921-17Z (Step III response January 13, 2017)

- ¶¶ 181-182, MRF-16-10-1922-12Z (Step III response January 31, 2017) (*see also* ECF No. 1-1, PageID.184)

- ¶¶ 183-184, MRF-16-10-1923-28A (Step III response December 31, 2016) (*see also* ECF No. 1-1, PageID.194)

- ¶¶ 185-186, MRF-16-10-1886-08Z (Step III response March 9, 2017) (*see also* ECF No. 1-2, PageID.204)

- ¶ 187, MRF-16-10-1937-12Z (Step III response January 31, 2017) (*see also* ECF No. 1-2, PageID.214)

- ¶¶ 188-189, MRF-16-10-1938-28B (Step III response December 31, 2016)

- ¶¶ 190-191, MRF-16-11-2169-28E (Step III response February 28, 2017)

- ¶¶ 192-193, MRF-16-11-2152-28E (Step III response February 28, 2017)

- ¶¶ 194-196, MRF-16-11-2162-12D (Step III response March 28, 2017)

- ¶¶ 198-199, MRF-16-09-1735-28C (Step III response December 31, 2016)

- ¶¶ 27, 200-201, ARF-18-10-2714-28C (Step III response January 14, 2019)

- ¶ 202, MRF-16-12-2285-12Z (Step III response March 28, 2017) (*see also* ECF No. 16, PageID.486)

- ¶¶ 203-204, MRF-16-12-2886-12Z (Step III response March 28, 2017) and/or MRF-16-12-2286-12Z (ECF No. 16, PageID.480-483), which does not appear to have been pursued through Step III (ECF No. 54-3).

(*See also* ECF No. 54-3; ECF No. 64, PageID.879-880.)

### b.   Claims based on 2016 at MRF are time-barred.

The MDOC Defendants argue that the "numerous claims which occurred at [MRF] in 2016" and are first raised in the September 23, 2020 operative pleading are "time barred."  (ECF No. 64, PageID.880-882; *see also* ECF No. 75, PageID.975; ECF No. 111, PageID.1124.)  The MDOC Defendants acknowledge that "[t]he statute of limitations for claims subject to the PLRA is tolled while the plaintiff exhausts his required administrative remedies[,]" *Surles*, 678 F.3d at 458 (citing *Brown,* 209 F.3d at 596), but they posit that the last of Plaintiff's MRF grievances "were fully appealed on March 28, 2017."  (ECF No. 64, PageID.881-

22

882.)  As detailed above, the statute of limitations is 3 years.  *See Owens*, 488 U.S.

at 240; Mich. Comp. Laws § 600.5805(2); Mich. Comp. Laws § 600.5827.

Therefore, at the latest, the statute of limitations on any claims alleged exhausted

by such grievances would have expired on March 28, 2020 – well before the

September 23, 2020 operative pleading (ECF No. 16).

### c.    Claims based on 2018 at ARF are not properly exhausted.

The MDOC Defendants do not address Plaintiff's claims concerning the

alleged events at ARF on October 19, 2018 concerning his medical footwear, as to

which Plaintiff mentions a related grievance – ARF-18-10-2714-28C.  (ECF No.

16, ¶¶ 27, 200-201.)  To be clear, this report considers ARF-2714 as part of the

pleading, because it was attached to Plaintiff's original complaint (ECF No. 1-1,

PageID.123-130) and mentioned within the now operative pleading (ECF No. 16,

¶¶ 27, 200-201).  ARF-2714 was received at Step I on October 23, 2018 (rejected

as having multiple issues), received at Step II on November 20, 2018 (rejection

upheld), and received at Step III on January 2, 2019 (rejection upheld on January

14, 2019).  (ECF No. 54-3, PageID.732.)

Although a claim related to October 2018 and grieved by ARF-2714 would

not be time-barred, ARF-2714 does not properly exhaust Plaintiff's related claims,

because it was rejected at all three steps.  *See* 42 U.S.C. § 1997e(a); *Siggers*, 652

F.3d at 692; *Woodford*, 548 U.S. at 90–91.

### d.    Claims based on rejection of grievances

The MDOC Defendants also seek dismissal of the claims against MRF Grievance Coordinator E. Taylor and ARF Grievance Coordinator Ream.  (ECF No. 64, PageID.882-885.)  If not already addressed above as to 2016 or 2018, Plaintiff's allegations regarding MRF Grievance Coordinator E. Taylor appear to concern her rejection of several grievances at Step I for various reasons.  *See, e.g.,* MRF-16-09-1735-28C (ECF No. 1-1, PageID.142-150 [multiple issues], ECF No. 16, ¶¶ 198-199); MRF-16-10-1923-28A (*id.*, PageID.194-202 [duplicate issues], ECF No. 16, ¶ 183); MRF-16-10-1938-28B (*id.*, PageID.224-232 [vague], ECF No. 16, ¶¶ 188-189); MRF-16-11-2152-28E (*id.*, PageID.242-250 [untimely], ECF No. 16, ¶¶ 192-193); and, MRF-16-11-2169-28E (*id.*, PageID.234-240 [untimely], ECF No. 16, ¶¶ 190-191).  Likewise, Plaintiff's allegations regarding ARF Grievance Coordinator Ream appear to concern her rejection of ARF-18-10-2714-28C (ECF No. 1-1, 120, 123-130 [multiple issues], ¶¶ 27, 200-201).[8]

Defendants acknowledge Plaintiff's identification of E. Taylor and Ream as grievance coordinators at MRF and ARF, but Defendants further state:

---

[8] E. Taylor also rejected MRF-16-10-1925-28B at Step I as vague (*see id.*, PageID.176-182), and Ream also rejected ARF-18-10-2535-28G at Step I for lack of jurisdiction (ECF No. 1, PageID.36-42); however, these grievances do not appear to be the sources of Plaintiff's claims against E. Taylor and Ream (*see* ECF No. 16, ¶¶ 168, 178).

24

> . . . Bell has not made any factual allegations showing these
> Defendants' personal involvement in the complained-of acts, and
> merely states that these Defendants did not rectify the particular
> situation when brought to their attention via the grievance process.
> Because Bell has failed to show personal involvement sufficient to
> impose liability under § 1983, Grievance Coordinators Eutrilla Taylor
> and Stacey Ream are entitled to dismissal.

(ECF No. 64, PageID.885.)  Defendants are correct.  To the extent Plaintiff's

claims against E. Taylor and Ream are based solely on their "denial of

administrative grievances or the failure to act[,] . . . they cannot be liable under §

1983." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  Indeed, as the Court

stated in its May 18, 2020 order of partial dismissal as to the original pleading, "to

the extent plaintiff is dissatisfied with the investigation of his complaints or the

denial of his grievances, he fails to state a claim upon which relief may be granted .

. . ."  (ECF No. 7, PageID.407.)

## C.     Conclusion

Two more points are worth mentioning here.  First, in his April 12, 2022

response, Plaintiff makes repeated references to continuing wrong(s), harm(s),

violation(s), *etc*., including multiple citations to *Hensley v. City of Columbus*, 557

F.3d 693, 697 (6th Cir. 2009) ("a 'continuous violation' exists if: (1) the

defendants engage in continuing wrongful conduct; (2) injury to the plaintiffs

accrues continuously; and (3) had the defendants at any time ceased their wrongful

conduct, further injury would have been avoided.") (citations omitted).  (*See* ECF

No. 83, PageID.1011-1015, 1021-1025.)  Not only is *Hensley* distinguishable (as a non-prisoner case where the Sixth Circuit affirmed the district court's dismissal of Plaintiffs' federal takings claim), but also the Sixth Circuit "employs the continuing violations doctrine most commonly in Title VII cases, and *rarely extends it to § 1983 actions*."  *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003) (emphasis added).  Second, Plaintiff claims that "[c]ourts are more likely to apply equitable tolling if there is some reason it would be unfair to . . . dismiss your case as time -barred[,]" such as "if you made a technical mistake the first time you tr[i]ed io exhaust."  (ECF No. 83, PageID.1026.)

However, Plaintiff's April 12, 2022 response does not deliver on "continuous violation" and "equitable tolling" arguments just by merely sprinkling those terms in various spots within his briefing.  He does not connect the dots to the specific facts of his case, to specific instances or dates or to the narrowly applied doctrine for it to be applied here, even stretching to make the assumption that this would be the "rare" § 1983 case to which the doctrine should be applied.  Mere mention of legal concepts in the most general way, even repeatedly, does not prove that they apply.  "'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.'"  *McPherson v. Kelsey*, 125

26

F.3d 989, 995-996 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995) (citation omitted)).  Here, the Court is unable to decipher Plaintiff's argument enough to be able to put any flesh on its bones whatsoever.

The Court should **GRANT** the dispositive motion filed by Corizon Health, Husain, and McKissick (ECF No. 71) and **DISMISS** all remaining claims against these Defendants, although:  **(1)** where the Court *sua sponte* concludes Plaintiff's July 2018-related claims do not appear to have been properly exhausted, such claims should be dismissed *without prejudice* (*see* Section II.B.3.d.iii); and, **(2)** as a result of the "suggestion of bankruptcy and notice of automatic stay" (ECF No. 134), the objection period as to the recommendations made regarding the claims against Corizon Health only and the Court's consideration of the motion *as it relates to the corporation* are currently **STAYED**.  The Court should also **GRANT** the dispositive motions filed by MDOC Defendants Steece, E. Taylor, Adray, Ream (ECF No. 64), Rivard-Babisch (ECF No. 75), Hass, E. Parr-Mirza, and S. Tyler (ECF No. 111) and **DISMISS** all remaining claims against these Defendants *with prejudice*.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc*. Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d). The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc*. If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Dated: February 21, 2023

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE