UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

CEDRIC BELL #248097,

Plaintiff,

v

STATE OF MICHIGAN ADMINISTRATIVE BOARD OF CLAIMS, *et al.*,

Defendants.

NO. 2:20-cv-10193

HON. BERNARD A. FRIEDMAN

MAG. ANTHONY P. PATTI

Cedric Bell #248097
*In Pro Per*
Kinross Correctional Facility
4533 W. Industrial Park Drive
Kincheloe, MI 49788

Allan J. Soros (P43702)
Assistant Attorney General
Attorney for MDOC Defendants
Michigan Department of Attorney General
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055

CHAPMAN LAW GROUP
Devlin K. Scarber (P64532)
Jeffrey L. Bomber (P85407)
Attorney for Corizon Health, Dr. Husain and PA McKissick
1441 West Long Lake Road, Suite 310
Troy, MI 48098
(248) 644-6326

/

**MDOC DEFENDANTS WHITE, NETHERCOTT AND MARINE'S MOTION FOR SUMMARY JUDGMENT**

Michigan Department of Corrections ARF Defendants, Jeffrey White, Christopher Nethercott, and Debrah Marine, bring this motion under Fed. R. Civ. P. 56(a), and ask the Court to enter its order dismissing Plaintiff's Amended Complaint and granting summary

judgment in ARF Defendants' favor, based on the grounds set forth in Defendants' accompanying brief.

Concurrence in this motion has not been sought because Plaintiff is an incarcerated prisoner proceeding in pro se.

Respectfully submitted,

*s/ Allan J. Soros*
Assistant Attorney General
Attorney for MDOC Defendants
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
sorosa@michigan.gov
P43702

Dated: June 20, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

CEDRIC BELL #248097,

Plaintiff,

v

STATE OF MICHIGAN ADMINISTRATIVE BOARD OF CLAIMS, *et al.*,

Defendants.

NO. 2:20-cv-10193

HON. BERNARD A. FRIEDMAN

MAG. ANTHONY P. PATTI

---

Cedric Bell #248097
*In Pro Per*
Kinross Correctional Facility
4533 W. Industrial Park Drive
Kincheloe, MI 49788

Allan J. Soros (P43702)
Assistant Attorney General
Attorney for MDOC Defendants
Michigan Department of Attorney General
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055

CHAPMAN LAW GROUP
Devlin K. Scarber (P64532)
Jeffrey L. Bomber (P85407)
Attorney for Corizon Health, Dr. Husain and PA McKissick
1441 West Long Lake Road, Suite 310
Troy, MI 48098
(248) 644-6326

---/

**MDOC ARF DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Allan J. Soros
Assistant Attorney General
Attorney for MDOC Defendants
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
sorosa@michigan.gov
P43702

Dated: June 20, 2023

## CONCISE STATEMENT OF ISSUES PRESENTED

1. A prisoner must exhaust his administrative remedies before filing a complaint under 42 U.S.C. § 1983. To properly exhaust, a prisoner must attempt to resolve the issue verbally within two business days of the offending event. A prisoner must then file a Step I grievance within five business days after attempting to verbally resolve the issue with the staff member involved. If not resolved, a prisoner must then file a Step II and III appeal. Plaintiff did not properly complete the grievance process regarding his Amended Complaint allegations. Should the Court dismiss Plaintiff's unexhausted Complaint allegations?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

### 1. Legal Standard for Exhaustion under 42 U.S.C. § 1997e(a)

Under 42 U.S.C. § 1997e(a), a prison inmate cannot maintain a civil rights action challenging prison conditions if he did not first exhaust all available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The Supreme Court has held that exhaustion requires proper exhaustion, which means that the prisoner must complete the administrative review process. *Woodford v. Ngo*, 548 U.S. 81 (2006).

## STATEMENT OF FACTS

Plaintiff, Cedric Bell, ("Bell"), is a *pro se* plaintiff, currently confined in the Michigan Department of Corrections ("MDOC") at the Kinross Correctional Facility (KCF) in Kincheloe, Michigan. Bell's Second Amended Complaint is filed under 42 U.S.C. § 1983 and protests infringement of his civil rights, alleging violations of the First and Eighth Amendments of the United States Constitution.

Bell alleges that Gus Harrison Correctional Facility Deputy Warden Jeffrey White, RN Manager Christopher Nethercott, and RN Debrah Marine failed to provide him with replacement boots/braces after they were confiscated at the Chippewa Correctional Facility on October 19, 2018, following an assault on another prisoner. [ECF No. 16, Page Id. 475, at ¶201].

## ARGUMENT

### I. A prisoner must exhaust his administrative remedies before filing a complaint under 42 U.S.C. § 1983. To properly exhaust, a prisoner must attempt to resolve the issue verbally within two business days of the offending event. A prisoner must then file a Step I grievance within five business days after attempting to verbally resolve the issue with the staff member involved. If not resolved, a prisoner must then file a Step II and III appeal. Plaintiff did not file a grievance regarding his Complaint

**allegations against any Defendant. The Court should dismiss Plaintiff's Complaint against these Defendants.**

## A. Legal Standard

A prisoner-plaintiff no longer has to plead or demonstrate exhaustion to satisfy the PLRA requirements of 42 U.S.C. § 1997e(a); failure to exhaust administrative remedies is an affirmative defense that must be raised by a defendant. *Jones v. Bock*, 549 U.S. 199 (2007). Under 42 U.S.C. § 1997e(a), a prison inmate cannot maintain a civil rights' action with respect to prison conditions brought under any federal law if he did not first exhaust all available administrative remedies.

The Supreme Court has held that exhaustion requires proper exhaustion, which means that the prisoner must complete the administrative review process. *Woodford v. Ngo*, 548 U.S. 81 (2006). Exhaustion of administrative remedies is a prerequisite to filing a prisoner lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "The plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Id.* at 523; *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). Exhaustion is an issue that must be determined before the

Court can review the merits of the plaintiff's claims and the remaining defenses raised by the defendants.

The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to "affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Nussle*, 534 U.S. at 525. The PLRA also was intended to "reduce the quantity and improve the quality of prisoner suits." *Id.* at 524.

Requiring proper exhaustion serves all of these goals. It gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors. *Woodford,* 548 U.S. at 94. This is important in relation to prison systems because it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." *Preiser v. Rodriguez*, 411 U.S. 475, 491-492 (1973). Thus, it is essential for a plaintiff to properly exhaust his administrative remedies before filing suit by filing a grievance that

complies with the prison grievance system regarding the allegations made in his complaint.

An untimely grievance, or otherwise improperly filed grievance, even though appealed through all steps of a grievance procedure, does not fulfill the exhaustion requirement of 42 U.S.C. § 1997e(a). Permitting an untimely or otherwise improperly filed grievance, even though appealed through all steps, to satisfy § 1997e(a)'s requirement "would permit a prisoner to bypass deliberately and flagrantly administrative review without any risk of sanction." *Woodford,* 548 U.S. at 97. The *Woodford* court explained:

> A prisoner who does not want to participate in the prison grievance process will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction …. For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration had no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Id.* at 95.

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 219.

**B. The applicable MDOC grievance policy, PD 03.02.130**

The administrative process applicable to Plaintiff's claims is governed by MDOC Policy Directive 03.02.130, "Prisoner/Parolee Grievances" (effective date 07/09/2007). The policy directive states, in pertinent part, as follows:

> E. Grievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant, including alleged violations of this policy and related procedures.
>
> * * *
>
> P. Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration. If the complaint is not resolved, the grievant may file a Step I grievance. The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with staff.
>
> * * *

> R. A grievant shall use the Prisoner/Parolee Grievance form (CSJ-247A) to file a Step I grievance; a Prisoner/Parolee Grievance Appeal form (CSJ-247B) shall be used to file a Step II or Step III grievance. The forms may be completed by hand or by typewriter however, handwriting must be legible. The issues shall be stated briefly but concisely. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.
>
> * * *
>
> V. Within five business days after attempting to resolve a grievable issue with staff, a grievant may send a completed Prisoner/Parolee Grievance form (CSJ-247A) to the Step I Grievance Coordinator designated for the facility, field office or other office being grieved....

(MDOC Defendants' Exhibit A).

**C. Bell has not properly exhausted his Amended Complaint allegations as to any ARF Defendant because he did not properly complete the grievance process regarding those issues raised in his Complaint.**

Bell has filed five Step III grievance appeals while incarcerated at ARF during the time period identified in his Amended Complaint. (MDOC Defendants' Exhibit B, pp. 8-9).

In Grievance ARF-18-10-2714-28C, Bell did complain that he spoke with RN Marine and that she informed him that the medical provider had canceled his accommodation for an AFO foot brace.

Neither Deputy Warden White nor RN Manager Nethercott are named in this grievance. Bell's Step I grievance was rejected for raising multiple issues and being untimely. Those rejections were upheld at Steps II and III. (*Id.* at p. 31-35).

Bell's handwritten comment appears to only question the timeliness of this grievance. The untimeliness issue is connected to Bell's admission that his boots were taken in July of 2017 while he was at the Chippewa Correctional Facility (URF). (*Id.* at p. 37). "As long as the state clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust." *Burnett v. Howard,* No. 2:09-cv-37, 2010 U.S. Dist. LEXIS 30499, at *3 (W.D. Mich. Mar. 30, 2010). Since Bell failed to follow the proper procedures, this grievance does not exhaust any of his Amended Complaint allegations.

Irrespective of the rejection issues, the Court should also conclude that Bell did not exhaust any claims against RN Marine with ARF-2714. Although Bell mentioned RN Marine at Step I in ARF-2714, he did not make any allegations that RN Marine terminated his medical

accommodation, but merely informed him that the medical provider canceled his medical accommodation on July 2, 2018. As such, ARF-2714 did not put RN Marine on notice as to *any claims* against her. *Claybron v. DeAngelo*, No. 26-cv-11953, 2023 WL 2572456, at *4 (E.D. Mich. Mar. 20, 2023) (finding that plaintiff failed to exhaust his claims against the warden, even when she was aware of allegations against custody staff, because nothing in the Step I grievance put her on notice that he was challenging her conduct). Thus, the Court should find that Bell did not exhaust any claims against RN Marine.

In grievance ARF-18-11-2858-27, Bell complained that he was denied a visit because his visitor wore a hooded sweatshirt. (MDOC Defendants' Exhibit B, pp. 39-44). Since this grievance does not relate to Bell's remaining claims in this matter, this grievance does not exhaust any claims against any ARF Defendant.

In grievance ARF-18-10-2721-27C, Bell complained that he was denied permission to use the typewriter in the Unit Dayroom. (*Id.*, pp. 45-52). Since this grievance does not relate to Bell's remaining claims in this matter, this grievance does not exhaust any claims against any ARF Defendant.

In grievance ARF-18-10-2635-28C, Bell complained at Step I that RUM Thomas and ARUS Siegel upheld a finding that his boots were contraband, after Bell assaulted another prisoner with them. (*Id.*, pp. 53-58). Nowhere in this Step I grievance does Bell name Deputy Warden White, RN Manager Nethercott, or RN Marine despite the requirement that the names of all those involved in the issue being grieved were to be included. (Defendants' Exhibit A at ¶R). "Under the Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and *names of all those involved in the issue* being grieved' in their initial grievance." *Reed-Bey v. Pramstaller,* 603 F.3d 322, 324 (6th Cir. 2010) (emphasis added). See, also, *Burton v. Jones,* 321 F.3d 569, 574 (6th Cir. 2003) (A prisoner did not properly exhaust his claim against a prison official "if the first allegation of mistreatment or misconduct on the part of that official is made at Step II or Step III of the grievance process…").

Finally, in grievance ARF-18-10-2535-28G, Bell complained that he was not allowed to pack his property after he was issued a misconduct violation and transferred. (MDOC Defendants' Exhibit B, pp. 59-65). Since this grievance does not relate to Bell's remaining

claims in this matter, this grievance does not exhaust any claims against any ARF Defendant.

If the exhaustion prerequisite of the PLRA is to have any meaning, it must carry sanctions for noncompliance with administrative procedural requirements. *Ngo*, 548 U.S. at 95. Here, prior to filing suit challenging the conditions from which this lawsuit arose, the PLRA required that Bell exhaust his administrative remedies regarding those conditions or actions. *Nussle*, 534 U.S. at 523. Moreover, the PLRA requires that Bell comport with all of MDOC's procedural requirements in order to properly exhaust administrative remedies. *Ngo*, 548 U.S. at 95. But Bell failed to exhaust any claims asserted in his Amended Complaint against ARF Defendants White, Nethercott, and Marine. Bell's failure to present properly his grievable claim against MDOC Defendants in the grievance procedure prevented MDOC from addressing and reviewing these claims on the merits, and he did not properly follow the rehearing process. *Ngo*, 548 U.S. at 90, 92.

Accordingly, Bell failed to complete the administrative review process regarding his claims against ARF Defendants White,

Nethercott, and Marine, and cannot now present them in this Court. *Id.* at 88; *Nussle*, 534 U.S. at 523. This Court should therefore dismiss the unexhausted claims and dismiss ARF Defendants White, Nethercott, and Marine.

## CONCLUSION AND RELIEF REQUESTED

ARF Defendants White, Nethercott, and Marine are entitled to summary judgment as Bell has failed to properly exhaust his administrative remedies. ARF Defendants request that the Court grant their Motion for Summary Judgment and dismiss them from this suit.

Respectfully submitted,

*s/ Allan J. Soros*
Assistant Attorney General
Attorney for MDOC Defendants
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
sorosa@michigan.gov
P43702

Dated: June 20, 2023
Soros\FED Intake\Bell 2020-0290627-A\MSJ-ARF (Exhaustion)

## CERTIFICATE OF SERVICE

I certify that on **June 20, 2023**, I electronically filed **MDOC ARF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, BRIEF IN SUPPORT, INDEX OF EXHIBITS, and EXHIBITS A through**

**B,** with the Clerk of the Court using the ECF system and I certify that my secretary, Joleen McQuiston, has mailed by U.S. Postal Service the papers to the following non-ECF participant(s):

Cedric Bell #248097
*In Pro Per*
Kinross Correctional Facility
4533 W. Industrial Park Drive
Kincheloe, MI 49788

*s/ Allan J. Soros*
ALLAN J. SOROS (P43702)
Assistant Attorney General
Corrections Division
P.O. Box 30217
Lansing, MI 48909
sorosa@michigan.gov
(517) 335-3055
P43702