UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CEDRIC MARK EARSHIN
BELL,

        Plaintiff,

v.

STATE OF MICHIGAN
ADMINISTRATIVE BOARD OF
CLAIMS, *et al.*,

        Defendants.
_____/

Case No. 2:20-cv-10193
District Judge Bernard A. Friedman
Magistrate Judge Anthony P. Patti

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT MDOC DEFENDANTS MARINE, NETHERCOTT, AND WHITE'S JUNE 20, 2023 MOTION FOR SUMMARY JUDGMENT (ECF No. 147)

**I.   RECOMMENDATION**: The Court should **GRANT** MDOC Defendants White, Nethercott, and Marine's June 20, 2023 motion for summary judgment (ECF No. 147).

**II.   REPORT**

   **A.   Background**

My January 27, 2023 report and recommendation (R&R) discussed the original complaint and order of partial dismissal (ECF Nos. 1, 7), the September 23, 2020 amended complaint (ECF No. 16), and the December 28, 2022 dismissal of five MDOC JCF Defendants – *i.e.*, Payne, Root, Sims, Curtis, and Ruhl (ECF

No. 131). (*See* ECF No. 132, PageID.1276-1279.) That history need not be repeated here.

Following my January 2023 R&R (ECF No. 132), the Court granted the dispositive motions filed by two additional MDOC Defendants – *i.e.*, Campbell and Russell. (ECF No. 136.) On March 16, 2023, following my February 2023 R&R (ECF No. 135), the Court dismissed with prejudice the claims against an additional ten defendants – *i.e.*, eight MDOC Defendants (Steece, Taylor, Adray, Ream, Rivard-Babisch, Haas, Tyler, and Parr-Mirza) and two Corizon Defendants (Husain and McKissick). (ECF No. 140.) On June 5, 2023, following my May 2023 R&R (ECF No. 143), the Court dismissed with prejudice the claims against another two MDOC Defendants (Jenkins-Grant and Herring). (ECF No. 144.) Finally, on July 6, 2023, following my June 2023 R&R (ECF No. 146), the Court dismissed without prejudice the claims against Defendant Cooper. (ECF No. 149.)

Accordingly, four named Defendants remain before the Court: (1) Corizon Health, as to which Judge Friedman has expressly stated the objection period "is STAYED pursuant to the suggestion of bankruptcy and notice of automatic stay (ECF No. 134)[,]" (ECF No. 140, PageID.1346); and, (2-4) Jeffrey White,

2

Christopher Nethercott, and Debrah Marine, each of whom has appeared (ECF Nos. 45, 46, 55, 56, 59, 60). (*See also* ECF No. 146, PageID.1370.)[1]

## B.     Pending Motion

On June 13, 2023, the Court entered a scheduling order as to Defendants White, Nethercott and Marine. (ECF No. 145.) Currently before the Court is Defendants White, Nethercott, and Marine's June 20, 2023 exhaustion-based motion for summary judgment (ECF No. 147), as to which Plaintiff's response was originally due on July 14, 2023 (ECF No. 148). Plaintiff sought an enlargement of time to respond (ECF No. 150), and, on July 12, 2023, the Court extended the deadline to August 28, 2023 (ECF No. 151). Since the Court granted the extension, Plaintiff has filed five items:

1.     A 7-page "motion notice/notice of address change," dated July 19, 2023, post-marked July 20, 2023 (mailed from Chippewa Correctional Facility (URF)), and filed on July 26, 2023 (ECF No. 152);

---

[1] Plaintiff lists "John Doe" and "Jane Doe" in the caption and introductory paragraph of the amended complaint (ECF No. 16, PageID.451), as well as within his "short and plain statement of facts . . . [,]" (*id.*, ¶ 31), and Counts I, II & III (*id.*, ¶¶ 146, 161, 170, 174). He also references "unknown" agents, Chief Medical Officer, staff, correctional officers, Corizon Health Employees, *etc.* (*Id.*, ¶¶ 10, 31, 40, 71, 77, 96, 146.) On at least four occasions, the Court has recognized that the twenty-four named Defendants *do not include* John and Jane Doe Defendants. (*See* ECF No. 50, PageID.679; ECF No. 123, PageID.1227; ECF No. 132, PageID.1278; ECF No. 146, PageID.1369-1370.) Nonetheless, in my February 2023 R&R, I discussed Plaintiff's claims against the "unknown Corizon health employees[.]" (ECF No. 135, PageID.1304, 1307-1314.)

3

    2.      A "motion to stay summary judgment and dismissal," (ECF No. 153), which the Court has already construed as related to the January 13, 2022 motion for summary judgment (*see* ECF No. 54) and denied as moot (ECF No. 160);

    3.      A 2-page letter mailed from URF, dated August 14, 2023, post-marked August 18, 2023, and filed on August 22, 2023, concerning "imminent danger of physical injury" and alleging "protection denied by facility staff" (ECF No. 154);

    4.      A 9-page letter mailed from URF, dated August 20, 2023, post-marked August 22, 2023, and filed August 28, 2023, mentioning, *inter alia*, the alleged events of July 13, 2023 to August 18, 2023 (ECF No. 157); and,

    5.      A 1-page address change, dated September 28, 2023, post-marked October 5, 2023 (mailed from Carson City Correctional Facility (DRF)), and filed on October 11, 2023 (ECF No. 159).

These are not responses to the pending dispositive motion. Thus, the motion is unopposed. E.D. Mich. LR 7.1(c)(1). Nonetheless, the Court must consider whether MDOC Defendants White, Nethercott, and Marine have met their "burden of demonstrating the absence of a genuine issue as to a material fact." *Carver v. Bunch*, 946 F.2d 451, 454 (6th Cir. 1991) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970)).

    **C.**    **Discussion**

Preliminarily, my February 21, 2023 R&R set forth an extensive factual background, which reviewed Plaintiff's special accommodation orders and hospital visits. (ECF No. 135, PageID.1298-1302.) That filing also interpreted Plaintiff's claims as based on First Amendment retaliation or Eighth Amendment deliberate

4

indifference to a serious medical need. (*Id.*, PageID.1302-1303.) These portions of my prior R&R need not be repeated here. Notably, no objections were filed to that R&R, and it was adopted in its entirety. (ECF No. 140.)

### 1. Plaintiff's claims against White, Nethercott, and Marine

Plaintiff clearly intends to name White, Nethercott, and Marine as Defendants, because he lists each of them not only in the caption of his operative pleading but also in the opening paragraph. (ECF No. 16, PageID.451.) Admittedly, Plaintiff does not separately list White, Nethercott or Marine as a party in any of the paragraphs that appear under the **"PARTIES"** heading (*see id.*, PageID.451-453 ¶¶ 3-19); however, Plaintiff does mention Nethercott within the **"EXHAUSTION OF ADMINISTRATIVE REMEDIES"** section, namely in connection with ARF-18-10-2714-12D (*id.*, PageID.454-455 ¶ 27), and Plaintiff describes Marine and Nethercott as Registered Nurses – one a nurse supervisor and the other a nurse manager – within the **"THE PARTIES TO THIS ACTION AND THEIR JOB TITLES"** section (*id.*, PageID.456-458 ¶¶ 42, 43). Indeed, it seems White is or was Gus Harrison Correctional Facility (ARF)'s Deputy Warden, while Nethercott and Marine are or were registered nurses associated with ARF. (ECF No. 147, PageID.1381.)

Beyond these preliminary paragraphs, it seems that only two substantive paragraphs – each within Count III and each quoted here verbatim – mention these Defendants by name:

- [ARF], Ream grievance coordinator, Deputy White, Nethercott (RN-Nurse Manager), [and] Marine (RN supervisor) exercise[d] deliberate indifference to plaintiff[']s] health by failing to provide adequate medical care to him following medical treatment by [certain] doctor(s) [doctors' names omitted here] the above are facility doctor(s) as well emergency room doctor(s) from . . . McLaren Macomb Hospital, Henry Ford Hospital, Mount Clemens Regional Medical [C]enter, Henry [F]ord Macomb Hospital. (See grievance file[d] [with] original complaint ARF-2018-10-2714- 28C [(ECF No. 1-1, PageID.124-130)], and E-Mail from Ream to nurse manager Nethercott . . . to deny plaintiff medical treatment and the grievance complaint [(*id*., PageID.123)].[2]

- As a result of Ream, White, Nethercott (RN), [and] Marine (RN)[']s deliberate indifference to plaintiff[']s condition, plaintiff suffered further pain and mental anguish. Plaintiff continue[s] to suffer muscle deterioration in legs left and right, back pain from spine injury, liver damages untreated, feet are wet as plaintiff [has] been denied foot wear boots/braces and orthopedic athletic shoes new balance . . . [t]hat were provided to plaintiff September 29, 2015 by Hanger Clinic and then taken by MDOC staff July 2017, when medical staff lied and said I assaulted a prisoner. . . . [T]hey were return[ed] and then taken again October 19, 2018 by the above. And plaintiff was never provided replacement boots/braces or orthopedic athletic new balance shoes. Plaintiff is still suffering as of this filing.

(ECF No. 16, ¶¶ 200, 201.) (*See also* ECF No. 147, PageID.1381.)

---

[2] The November 1, 2018 email to which Plaintiff apparently refers is authored by Nethercott and addressed to Ream. (ECF No. 1-1, PageID.123.)

## 2. Plaintiff's ARF grievances pursued through Step III

Defendants White, Nethercott, and Marine argue that "Bell has not properly exhausted his Amended Complaint allegations as to any ARF Defendant because he did not properly complete the grievance process regarding those issues raised in his Complaint." (ECF No. 147, PageID.1386-1391.) "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement . . . requires 'proper' exhaustion, which includes compliance with a state agency's timeliness deadlines." *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).

In support of their exhaustion argument, Defendants White, Nethercott, and Marine reference Plaintiff's MDOC Prisoner Step III Grievance Report, namely the "five Step III grievance appeals" Plaintiff filed "while incarcerated at ARF during the time period identified in his Amended Complaint[,]" (ECF No. 147, PageID.1386), which consist of:

- **ARF-18-10-2535-28G (ECF No. 147-3, PageID.1462-1468):** Plaintiff completed this grievance on September 25, 2018, listing July 9, 2018 as the "date of incident," and seeking, *inter alia*, relief from Payne and Root for replacement of property (*id.*, PageID.1465-1467). Plaintiff has previously described Payne and Root as correction officers at JCF and July 9, 2018 as a date on which Payne issued a false misconduct. (ECF No. 16, ¶¶ 4, 5, 29, 58.) This grievance was rejected at Step I "for the reason that i[t] lack[ed] jurisdiction[,]" and the handwritten response further explains, "need to grieve [JCF], not ARF. Also untimely[.]" (*Id.*, PageID.1468, 1465.) *See also* MDOC PD 03.02.130, effective July 9, 2007, ¶ R (ECF No. 147-2, PageID.1398).

- **ARF-18-10-2635-28C (ECF No. 147-3, PageID.1456-1461):** Plaintiff completed this grievance on October 12, 2018, listing a same-day "date of incident," and mentioning, *inter alia*, "medical boots/braces," his television, and shorts with pockets (*id.*, PageID.1459, 1461). This grievance was rejected at Step I for having "multiple issues[.]" (*Id.*, PageID.1460.) *See also* MDOC PD 03.02.130, effective July 9, 2007, ¶ G(1) (ECF No. 147-2, PageID.1396).

- **ARF-18-10-2714-28C (ECF No. 147-3, PageID.1435-1441):** Plaintiff completed this grievance – which concerns, *inter alia*, a special accommodation notice for boots to accommodate his AFO (ankle foot orthotics) braces – on October 19, 2018, listing a same-day "date of incident," mentioning Marine at Step I (*id.*, PageID.1439-1440),³ and mentioning Marine and Nethercott (and RUM Thomas) at Step II (*id.*, PageID.1436, 1438). This grievance was rejected at Step I as having "multiple issues," and the handwritten response further states, "also untimely[.]" (*Id.*, PageID.1439, 1441.) *See also* MDOC

---

³ To be sure, it seems that some of the pages Plaintiff allegedly attached to his Step I grievance in ARF-2714 are missing, because he mentions attaching four, there are only two pages, and it is not clear whether the end of the second page will continue on another page; however, the Court may be mistaken, as Defendants' motion attachment matches Plaintiff's attachment to his original complaint. (*See* ECF No. 1-1, PageID.124-125; ECF No. 147-3, PageID.1439-1440.)

8

PD 03.02.130, effective July 9, 2007, ¶ G(1) (ECF No. 147-2, PageID.1396).

- **ARF-18-10-2721-27C (ECF No. 147-3, PageID.1448-1455):** Plaintiff completed this grievance on October 23, 2018, listing an October 22, 2018 "date of incident," and mentioning, *inter alia*, his unsuccessful attempt to bring his typewriter into the dayroom to prepare a legal brief regarding an appeal of Case No. 17-000895-AA (Ingham County Circuit Court) (*id.*, PageID.1451, 1453-1454). This grievance was rejected at Step I as grieving "adm rule/[d]ecisions from CFA[.]" (*Id.*, PageID.1452.) *See also* MDOC PD 03.02.130, effective July 9, 2007, ¶¶ F(2)-(4) (ECF No. 147-2, PageID.1396).

- **ARF-18-11-2858-27 (ECF No. 147-3, PageID.1442-1447):** Plaintiff completed this grievance on November 1, 2018, listing October 28, 2018 as the "date of incident," and mentioning, *inter alia*, that his son was "denied to visit . . . as he had on a hooded sweatshirt[,]" and was "offer[ed] female attire by facility staff[,]" (*id.*, PageID.1445-1446). This grievance was rejected at Step I as grieving "[c]ontent of [d]ept. wide policy/proc.[,]" the response references MDOC PD 05.03.118 ("Prisoner Mail"), and the handwritten response further points to MDOC PD 05.03.140 ("Prisoner Visiting") and MDOC PD 02.03.103 ("Employee Uniforms"). (*Id.*, PageID.1447, 1445.) *See also* MDOC PD 03.02.130, effective July 9, 2007, ¶ F(1) (ECF No. 147-2, PageID.1396).

(*See also* ECF No. 147-3, PageID.1411-1412 [MDOC Prisoner Step III Grievance Report].) In each of these five grievances: (1) the rejection was upheld at Step II (*id.*, PageID.1437, 1444, 1450, 1458, 1464); and, (2) either on December 10, 2018 or January 14, 2019, the rejection was upheld at Step III with the same explanation: "this decision cannot be appealed within the department[,]" (*id.*, PageID.1435, 1442, 1448, 1456, 1462).

9

### 3. Failure to properly exhaust

#### a. ARF-2535, ARF-2721, and ARF-2858

As to each of these grievances, Defendants argue: "[s]ince this grievance does not relate to Bell's remaining claims in this matter, this grievance does not exhaust any claims against any ARF Defendant." (ECF No. 147, PageID.1388-1390.) These appear to be accurate interpretations of the Step I grievances in ARF-2535 (which seems to relate to JCF), ARF-2721 (which mentions the appeal of a state court case), and ARF-2858 (which mentions a visit from his son), as outlined above, when compared with Plaintiff's claims against White, Nethercott, and Marine (which concern medical treatment). Nor, incidentally, can White be liable under 42 U.S.C. § 1983 simply based on his November 13, 2018 review of the Step I grievance response in ARF-2858 (*see* ECF No. 147-3, PageID.1445, 1447). *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Thus, ARF-2535, ARF-2721, and ARF-2858 do not operate to properly exhaust Plaintiff's claims against White, Nethercott, or Marine, as set forth in the operative pleading (ECF No. 16, ¶¶ 27, 200-201).[4]

---

[4] Although Plaintiff expressly references ARF-2535 within Count Two ("Failure To Administer Adequate Medical Remedy") of his amended complaint (*see* ECF No. 16, ¶ 168), as explained above, the Step I response directed Plaintiff "to grieve [JCF], not ARF[,]" (ECF No. 147-3, PageID.1465).

### b. ARF-2635

As to this grievance, Defendants argue: "[n]owhere in this Step I grievance does Bell name Deputy Warden White, RN Manager Nethercott, or RN Marine[,] despite the requirement that the names of all those involved in the issue being grieved were to be included." (ECF No. 147, PageID.1389.) This appears to be an accurate interpretation of ARF-2635, which mentions RUM Thomas, ARUS Siegel, Aiken, and others at Step I, even though this grievance also mentions being informed he did not have a valid "special accommodation notice for orthopedic boots or orthopedic [athletic shoes]" and further mentions his "personal orthopedic boots that [he] was using" are at Duane Waters Health Center (DWH), which is in Jackson, Michigan. (*See* ECF No. 147, PageID.1459, 1461.) The MDOC's grievance policy directive provides: "Dates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC PD 03.02.130, effective July 9, 2007, ¶R (ECF No. 147-2, PageID.1398). Thus, ARF-2635 does not operate to properly exhaust Plaintiff's claims against White, Nethercott, or Marine, as set forth in the operative pleading (ECF No. 16, ¶¶ 27, 200-201).

### c. ARF-2714

Preliminarily, it is worth noting that Plaintiff mentions this specific grievance in the operative pleading when he expressly mentions White, Nethercott, and/or Marine. (ECF No. 16, ¶¶ 27, 200.) Thus, even though this motion is

11

unopposed, the Court strongly suspects this is the grievance upon which Plaintiff would most likely rely to argue he has exhausted his available administrative remedies as to his claims against White, Nethercott, and/or Marine.

### i. Reasons for rejection

Defendants make several observations about ARF-2714, among them that the grievance was denied/rejected at Step I for "raising multiple issues" and "being untimely." (ECF No. 147, PageID.1387.) *See* MDOC PD 03.02.130 ¶¶ G(1), G(4) (ECF No. 147-2, PageID.1398). The conclusion that ARF-2714 is untimely is called into question by:

    a)      someone's handwritten notes on the Step I response – including, "how is it untimely," "he saw medical that date," "there's no kite request why?" and "did Bell get call[ed] over to health care?" (ECF No. 147-3, PageID.1439, 1441); and,

    b)      Plaintiff within his Step II appeal, where he states, *inter alia*, "complaint was timely[,]" (*id.*, PageID.1436, 1438).

In their motion, Defendants contend that untimeliness "is connected to Bell's admission that his boots were taken in July of 2017 . . . ." (ECF No. 147, PageID.1387.)[5] While Step I of ARF-2714 mentions his footwear was authorized

---

[5] In a November 1, 2018 email about ARF-2714, Nethercott explained to Ream: "The grievant claims . . . his boots were taken in July of 2017 and not returned to him while also requesting return of boots in this grievance, making this an untimely grievance." (ECF No. 1-1, PageID.123 ¶ 1.)

in 1996,[6] his boots were given to URF medical staff in July 2017 for repair, and a July 2, 2018 doctor visit at which his special accommodation notice was cancelled, the grievance also states, *inter alia*: "I would like to know the name of the doctor that treated me and remove[d] boots and athletic shoes on <u>July 2, 2018.  This is what [Marine] told me on Oct[ober] 19, 2018</u>, but the problem is [there is] no documentation of this . . . ."  (ECF No. 147-3, PageID.1439-1440 (emphasis in original).)  Additionally, the October 2018 ARF-2714 Step I grievance alleges Plaintiff has waited "over 2 ½ years for Velcro replacement[,]" and further alleges "it's been [15 or 16] months without" his "metal AFO braces/boots[,]" which he claims are at URF.  (*Id.*, PageID.1440.)

Beyond the debate about ARF-2714's timeliness, it was also denied for having "multiple issues[.]"  (*Id.*, PageID.1441.)  Although Defendants do not elaborate on this reason in their motion (*see* ECF No. 147, PageID.1387), the Step I respondent's support for this reason appears to have been the following November 1, 2018 statement from Nethercott:

> The grievant is requesting the return of his boots that were taken in 2017.  Requesting the name of the doctor that treated him on July 2, 2018.  Claiming that his medical records were changed.  Claiming that the staff of URF gave false information to the medical staff in 2017

---

[6] Per the Offender Tracking Information System (OTIS), Plaintiff is in MDOC custody serving a sentence imposed on February 23, 1996 in Case No. 95-13659 (Wayne County).  *See* www.michigan.gov/corrections, "Offender Search," last visited Dec. 14, 2023.  Thus, it may be that the alleged authorization occurred at or around intake.

13

> and that the false information was added to his medical record. Claiming that he is being retaliated against by medical staff because of something that happened at MRF [Macomb Correctional Facility] and JCF [G. Robert Cotton Correctional Facility]. Claiming that he was denied proper follow up treatment and that he does not receive call outs for his appointments. All are multiple unrelated issues.

(ECF No. 1-1, PageID.123 ¶ 2.) To be sure, Step I of ARF-2714 mentions some matters seemingly unrelated to Plaintiff's special accommodation notice for footwear, *e.g.*:

- After my family contacted the State of Michigan . . . , (URF) staff told medical staff I assaulted a prisoner. This assault never happen[ed], but it did not stop medical staff from placing it in a memo in my file. I was sent a complaint packet and I was transfer[r]ed out the next day, leaving the next facility to deal with false information.

- I am being retaliated against by medical staff over what happen[ed] to me at (MRF) as well [as] (JCF) medical . . . .

(*Id.*, PageID.1440 (underlines in original).)

However, whatever debates exist as to Step I of ARF-2714's timeliness or whether it grieves multiple issues, on balance, it seems to be primarily about Plaintiff's footwear, with some contextual garnish or related details. . Therefore, whatever other dates or issues are mentioned, the Undersigned suspects that ARF-2714 was intended to "resolve this matter [by] having medical staff replace [his] boots back on [his] medical accommodation . . . ." (*Id.*) That said, the Court need not consider whether to overturn the MDOC's characterization of the Step I grievance as untimely or presenting "multiple unrelated issues," because ARF-

2714 is fatal on the issue of notice as to Defendants Marine, White, or Nethercott, as discussed below.

### ii. Notice to Marine

Beyond the reasons for rejection, Defendants raise the issue of who is named in ARF-2714. (ECF No. 147, PageID.1387-1388.) *See* MDOC PD 03.02.130, effective July 9, 2007, ¶ R (ECF No. 147-2, PageID.1398) ("Dates, times, places, and names of all those involved in the issue being grieved are to be included."). As for Marine, she is clearly referenced more than once at Step I. (ECF No. 147-3, PageID.1439-1440; *see also id*., PageID.1436, 1438 [Step II].) Nonetheless, Defendants contend that Plaintiff "did not make any allegations that RN Marine terminated his medical accommodation, but merely informed him that the medical provider canceled his medical accommodation on July 2, 2018." (ECF No. 147, PageID.1387-1388.) As a result, they argue, "ARF-2714 did not put RN Marine on notice as to *any claims* against her." (*Id*. (emphasis in original).)

In this grievance, Plaintiff states he "spoke directly to (RN Marine)" who, in addition to stating she was a nurse supervisor at ARF, informed Plaintiff that he "saw [a] doctor [on] July 2, 2018 and [his] special accommodation notice was cancel[led] by a facility doctor[,]" and "the footwear are being taken that [he has] to accommodate the AFO braces." (ECF No. 147-3, PageID.1439.) In seeking to get "the name of the doctor that treated [him] and remove[d] boots and athletic

15

shoes on July 2, 2018[,]" Plaintiff stated: "This is what (RN Marine nursing supervisor) told me on Oct[ober] 19, 2018, but the problem is [there is] no documentation of this[.]" (*Id.*, PageID.1440 (emphasis in original).)  To be sure, Plaintiff's Step I grievance makes several references to "medical staff," (*id.*, PageID.1439-1440), including that "([ARF]) medical staff is removing [his footwear] without a doctor treatment or evaluation[,]" and he "would like to resolve this matter [b]y having medical staff replace [his] boots back on [his] medical accommodation . . . ." (*id.*, PageID.1440).  However, assuming Plaintiff mentions Marine solely as the transmitter of "bad news," including that his special accommodation notice for footwear was cancelled or removed (*id.*, PageID.1439-1440), Defendants fairly assess ARF-2714 Step I's content as failing to provide Marine with notice of Plaintiff's *legal claims against her*.  See *Johannes v. Washington*, No. 14-11691, 2016 WL 1253266, at *12 (E.D. Mich. Mar. 31, 2016) (Michelson, J.) (Turner's grievance "simply did not provide fair notice of any claim against Washington."); *Claybron v. DeAngelo*, No. 21-CV-11953, 2023 WL 2572456, at *3 (E.D. Mich. Mar. 20, 2023) (Goldsmith, J.) (citing *Johannes*).  See also *Mattox v. Edelman*, 851 F.3d 583, 596 (6th Cir. 2017) ("[W]e hold that the inmate can only exhaust claims where he notifies the relevant prison medical staff as to which facets of his care are deficient.").

16

### iii.    White and Nethercott

As for <u>White and Nethercott</u>, Defendants accurately note that neither is named at Step I of ARF-2714 (*see* ECF No. 147-3, PageID.1439-1440), although, as noted above, Nethercott is mentioned at Step II (*id.*, PageID.1436, 1438).  (ECF No. 147, PageID.1387).  While Step I of ARF-2714 also refers to "medical staff," (*see id.*, PageID.1439-1440), the Court suspects that Plaintiff did not name White and Nethercott specifically at Step I, as it seems:  (a) Plaintiff's claim against Nethercott relates to his November 1, 2018 email to Ream (the actual ARF-2714 Step I respondent), asking Ream to "submit a response for rejection as it is both untimely and presenting with multiple unrelated issues within the body of this Step 1[,]" citing MDOC PD 03.02.130 ¶ G, and providing support for these reasons (ECF No. 1, PageID.123 ¶¶ 1-2; ECF No. 16, ¶¶ 27, 200); and, (b) Plaintiff's claim against White may be based on his November 13, 2018 review of Ream's November 8, 2018 Step I response in ARF-2714 (ECF No. 147-3, PageID.1439, 1441).  Where a defendant's only role "involve[s] the denial of administrative grievances or the failure to act[,]" he or she "cannot be liable under § 1983." *Shehee*, 199 F.3d at 300.

### D.    Conclusion

As set forth in detail above, the five ARF grievances Plaintiff pursued through Step III do not operate to properly exhaust his available administrative

remedies as to his claims against Defendants White, Nethercott, and Marine as set forth in the operative pleading (ECF No. 16, ¶¶ 27, 200-201).  (*See* Section II.C.3.)  That conclusion includes ARF-2714, which – even if, *arguendo*, was improperly rejected/denied as untimely (*see* MDOC PD 03.02.130 ¶¶ G(4)) and having "multiple unrelated issues" (*id*., ¶ G(1)) – fails to name those involved (*id*., ¶ R) and/or fails to provide adequate notice (*see Johannes*, 2016 WL 1253266, at *12; *Claybron,* 2023 WL 2572456, at *3).  (*See* Section II.C.3.c.)

      Defendants White, Nethercott, and Marine have met their burden to demonstrate "the absence of a genuine issue as to a material fact." *Carver*, 946 F.2d at 454 (citing *Adickes*, 398 U.S. at 157).  Their exhaustion-based motion for summary judgment is unopposed; put another way, Plaintiff has failed to rebut Defendants' assertions by filing a response.  Accordingly, the Court should **GRANT** the exhaustion-based motion for summary judgment filed by Defendants White, Nethercott, and Marine (ECF No. 147) and **DISMISS** all remaining claims against these Defendants *with prejudice*.  If the Court agrees with this recommendation, then only Defendant Corizon Health, which is currently in bankruptcy proceedings (*see Tehum Care Servcies, Inc.*, Case No. 23-90086 (Bankr. S.D. Tex.), would still remain before the Court (*see* ECF No. 140, PageID.1346).

18

### III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

19

Objection No. 2," *etc*. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: January 18, 2024

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE